B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only)<br><br>20-30776-KRH |
|---|---|

| PLAINTIFFS<br><br>Afrikka & LaVaniel Ennis | DEFENDANTS<br><br>Kevleena Shenese Webb |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Afrikka & LaVaniel Ennis, pro se<br>8218 Tatterton Trail, N. Chesterfield, VA 23237 | ATTORNEYS (If Known)<br>James E. Kane, Kane and Papa PC<br>1313 East Cary Street, PO Box 508<br>Richmond, VA 23218-0508 |
| PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>☒ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint against Kevleena Shenese Webb filed by Afrikka L. Ennis, LaVaniel D. Ennis Jr. Nature of suit
(68 (Dischargability-523(a)(6), willful and malicious injury (to property)) Associated Bankruptcy Case number 19-33315-KLP

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

FRBP 7001(1) – Recovery of Money/Property
- □ 11-Recovery of money/property – §542 turnover of property
- □ 12-Recovery of money/property – §547 preference
- □ 13-Recovery of money/property – §548 fraudulent transfer
- □ 14-Recovery of money/property – other

FRBP 7001(2) – Validity, Priority or Extent of Lien
- □ 21-Validity, priority or extent of lien or other interest in property

FRBP 7001(3) – Approval of Sale of Property
- □ 31-Approval of sale of property of estate and of a co-owner – §363(h)

FRBP 7001(4) – Objection/Revocation of Discharge
- □ 41-Objection / revocation of discharge – §727(c),(d),(e)

FRBP 7001(5) – Revocation of Confirmation
- □ 51-Revocation of confirmation

FRBP 7001(6) – Dischargeability
- □ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- □ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- □ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

FRBP 7001(6) – Dischargeability (continued)
- □ 61-Dischargeability – §523(a)(5), domestic support
- ☒ 68-Dischargeability – §523(a)(6), willful and malicious injury
- □ 63-Dischargeability – §523(a)(8), student loan
- □ 64-Dischargeability – §523(a)(15), divorce or separation obligation (other than domestic support)
- □ 65-Dischargeability - other

FRBP 7001(7) – Injunctive Relief
- □ 71-Injunctive relief – imposition of stay
- □ 72-Injunctive relief – other

FRBP 7001(8) Subordination of Claim or Interest
- □ 81-Subordination of claim or interest

FRBP 7001(9) Declaratory Judgment
- □ 91-Declaratory judgment

FRBP 7001(10) Determination of Removed Action
- □ 01-Determination of removed claim or cause

Other
- □ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- □ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ ~~14,255.66~~ $14,464.67 |

Other Relief Sought
Amendment of proposed Chapter 13 plan as it pertains to Plaintiff's judgement.

2023 SEP 22 AM 10: 20
U.S. BANKRUPTCY COURT
RICHMOND DIVISION

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Kevleena Shenese Webb | BANKRUPTCY CASE NO.<br>20-30776-KRH | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Virginia | DIVISION OFFICE<br>Richmond | NAME OF JUDGE<br>Huennekens |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>9/21/2023    9/22/23 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Afrikka L. Ennis  & LaVaniel D. Ennis, Jr. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Objection Re Case: 20-30776-KRH

# Objection To Determine Dischargeability And In Objection To Discharge

Bankruptcy

Afrikka L.and LaVaniel D Ennis Jr.
8218 Tatterton Trail
Chesterfield, VA 23237
(804) 271-2369

Creditors

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF VIRGINIA**

Objection Re Case: 20-30776-KRH

| | | |
|---|---|---|
| KEVLEENA S. WEBB, | ) | CASE NO. 20-30776-KRH |
| | ) | |
| Debtor | ) | Chapter 13 |
| ------------------------------------------------ | ◊ | |
| Afrikka L Ennis and LaVaniel D. Ennis Jr., | ) | OBJECTION TO DETERMINE |
| | ) | |
| Creditor | } | DISCHARGEABILITY AND IN OBJECTION TO DISCHARGE |
| | | [11 US.C. §§ 523(a)(6)] |

KEVLEENA S. WEBB,

Debtor

Afrikka L  Ennis and LaVaniel D. Ennis Jr.,

Creditor

CASE NO. 20-30776-KRH

Chapter 13

OBJECTION TO DETERMINE

DISCHARGEABILITY AND IN OBJECTION TO
DISCHARGE

[11 US.C. §§ 523(a)(6)]

Objection Re Case: 20-30776-KRH

Afrikka L. Ennis and LaVaniel D. Ennis Jr., creditor ("creditor(s)") of the above-named debtor, Kevleena S. Webb ("debtor Webb") in a sum in excess of $11,000 alleges:

## INTRODUCTION

1. Debtor Webb, willfully and maliciously injured the property, located at 7118 West Road, Chesterfield, VA 23832 ("West Rd"}, a 2400 square ft., detached, four (4) bedroom, 2.5 bath, single family home, which was owned, in joint tenancy, by the creditors. The plantiffs assert that the debtor's actions, mandates dismissal of our judgement from her bankruptcy petition without discharge, or, alternatively, that her debt to creditor be deemed nondischargeable.

2. Kevleena Webb entered into a rental lease agreement, for property located at 7118 West Road, Chesterfield, VA 23832, with the Creditors, who owned property in Joint Tenancy, on July 29, 2014. Lease was executed through Creditor's property management company RVA Rental Properties, LLC (property manager) with both Section 8, who would pay a portion of the rents, as debtor Webb had a voucher and with debtor Webb to pay the portion above what Section 8 agreed to pay. Debtor Webb was served with a letter of termination on August 14, 2018, due to habitual late payments of her portion of the rents. Debtor Webb was to vacate, NLT October 31, 2018, but did not vacate until November 10, 2018.

Upon debtor Webb's departure, a property walk through was scheduled for 3:30 pm on November 10, 2018. Both creditors and property manager, arrived at the property to meet debtor Webb for a walk through, per arrangement between her and property manager. After waiting for several minutes, property manager contacted debtor Webb, who advised she would be unable to participate as she was "called into work." Property manager advised we would proceed with the walk through as planned.

Prior to debtor Webb moving in, Creditors, had recently painted the home, cleaned the carpets, which had been well maintained, and installed new vinyl flooring in the kitchen. Both property manager and a Section 8 housing inspector conducted walk-through/inspections prior to debtor Webb moving in.

Upon entering the property, on November 10, 2018, after debtor Webb vacated, Creditors were shocked and appalled by the state of the property. It was immediately apparent that the damage that was caused by debtor Webb or her occupants, far exceeded any definition of "normal wear and tear." Both Creditors and property manager proceeded to take pictures and video of the property to document its state at the time of walk through. Prior to leasing to debtor Webb, the property was the Creditor's primary residence and was in excellent condition at lease start.

Debtor Webb is not eligible for discharge as a debtor in her bankruptcy action pursuant to 11 U.S.C. §523(a)(6). Debtor Webb is also indebted to creditor as fully detailed below, and the debt is not dischargeable in bankruptcy by virtue of the provisions of 11 U.S.C. §§ 523(a)(6).

Objection Re Case: 20-30776-KRH

## PARTIES

3. Creditor Afrikka L. Ennis and LaVaniel D. Ennis, Jr. ("Creditors") is, and were at all times relevant herein, individuals and residents of the County of Chesterfield, State of Virginia

4. Defendant Kevleena Webb is an individual who at all times relevant herein has been a resident of the City of Richmond and/or County of Chesterfield, State of Virginia.

## GENERAL AVERMENTS

5. Webb's debt to Creditor arises in the context of a judgment granted by the General District Court of Chesterfield, VA on April 4, 2019.

Afrikka L. Ennis and Lavaniel D. Ennis Jr. v Kevleena Webb, Chesterfield District Court, Commonwealth of Virginia, Case No. Vl80224042-00. Warrant in Debt was filed on December 26, 2018. Initial hearing was set for January 25, 2019 and continued to April 04, 2019. On April 04, 2019, both Creditors and debtor Webb were present in court. Creditors presented basis for suit to presiding judge, buttressed by photographic evidence, accounting and receipts for work done, and witness statements. The presiding judge offered debtor Webb the opportunity to present her defense against the damage claims. After hearing testimony and reviewing evidence presented, the judge ruled in Creditor's favor, and after reducing requested amount to account for normal wear and tear, awarded a judgement in the amount of $!1,545.87. Debtor Webb was advised that she had the right to file an appeal, if she so desired.

On April 11, 2019, debtor Webb filed a Motion to Rehear/Motion for New Trial. A hearing was scheduled on April 24, 2019. Both Creditors and debtor Webb were present at the motion to rehear. Debtor Webb did not present any new evidence at this time, and Creditors requested the Motion to Rehear be denied. The judge did rule to deny debtor Webb's motion. As the time for appeal had passed, creditors filed a garnishment summons in an effort to collect judgement.

The Garnishment Summons was served to the registered agent for debtor Webb's employer Greyhound Bus Lines. In response, the Garnishee's representative advised that debtor Webb was currently under bankruptcy, **case# 17-33014-KLP,** and as such, creditor's judgement could not be collected. On May 30, 2019, per debtor Webb's sworn testimony, she voluntarily dismissed her bankruptcy case with the intent to subvert responsibility for damages caused to Creditor's property, and monetary judgement rendered, by refiling a new bankruptcy case to include creditor's judgement

Objection Re Case: 20-30776-KRH

of $11,545.87, plus interest, and costs. Creditors assert dismissal of previous case was not done in good faith and was an attempt to avoid paying for her willful damage to creditor's property, a non-dischargeable debt. Subsequently debtor had bankruptcy case 19-03076-KLP dismissed following creditors previous Objection submission.

6.  Throughout debtor Webb's tenancy, Section 8 paid the majority of the rents for the property. At the establishment of the lease agreement, Section 8 paid $1279.00 per month and Debtor Webb paid the remaining $371.00 of the $1650.00 per month rent. At lease renewal, debtor Webb agreed to pay $421.00 per month for a total of $1700.00/ per month.

7. Debtor Webb began to be habitually late with her portion of the payment beginning in mid-2016, continuing through the termination of the lease in October 2018, with 13 late payments between January 2017 and November 10, 2018, when she vacated the property. Through this proceeding, creditors became aware that this coincided with debtor Webb's bankruptcy filing under case #17-33014-KLP. In addition, debtor Webb's failure to notify Creditors or property manager of previous bankruptcy, was a breach of paragraph 31 of the lease agreement signed by debtor Webb and Creditors, on July 29, 2014.

8. Periodic inspections were conducted on the property at West Rd, by both the property manager and Section 8 during debtor Webb's tenancy. Section 8 last inspected the property on or about April 24, 2018. Two (2) items were indicated as needing to be repaired by owner. Both items were remedied. Creditor Afrikka Ennis visited the property (first floor only) on July 12, 2018 to meet with a contractor and did not observe any issue with the home's condition. Creditor Afrikka Ennis again visited the property on September 24, 2018 to meet with another contractor, and again did not notice any issue with the home's condition.

9. Debtor Webb indicated in her bankruptcy plan that she had been employed by her current employer for 2 years. Creditor Afrikka Ennis recalls, during a visit to the property to meet a contractor, debtor Webb asked to talk about the notice to vacate. She advised she was to begin a new job with Greyhound bus lines which would pay more than she made with her previous employer, which she asserted, would allow her to begin paying her portion of the rent in a timely manner. As this conversation took place in late August or early September, Creditors, believe debtor Webb has misrepresented her time working at current employer.

10.    Debtor Webb also lists one vehicle, a 2012 Mercedes C-class 11000 as sole vehicle asset. Creditor Afrikka Ennis observed, at West Rd., a Chrysler 300, of unknown year, that debtor Webb appeared to be using for her primary transportation at the time she signed the lease, as well as a motorcycle of unknown make or model, as recently as September 2018. Creditors believe debtor Webb may be committing fraud by not listing all assets or having transferred assets to avoid declaring them in previous or current bankruptcy filing.

11.    The condition of the home, when the walk through occurred on November 10, 2018, as observed and documented by the creditors, far exceeded normal wear and tear and

Objection Re Case: 20-30776-KRH

would have been apparent to debtor Webb. All the carpets were severely damaged, there
was urine in the carpet and pad, the Berber carpet, in the living room, had claw marks,
and stains. There was significant damage to the kitchen ceiling from a leak in the
upstairs bathroom. Debtor Webb was aware of this leak and did not alert Creditors nor
property manager. When we looked at the bathroom in question, there was water on the
floor, as well as the toilet had been turned off from the line at the wall. The carpets
upstairs had, what a neighbor would tell us debtor Webb told her, was hair dye, from her
teenaged children conducting a hair salon business, in the home. All the marble sink
tops were cracked and damaged, we surmise, from hair chemicals being washed down
the sink. All the bathroom cabinets were stained with hair dye. There was a broken light
fixture, missing door stops, missing covers for the carbon monoxide detectors, missing
air exchange filters, and damage to nearly every wall, and door, as well. All the
plumbing under the sinks were filled with hair and dye and required replacement. There
were missing screens, broken screens, a broken dishwasher, and vinyl flooring in such
poor condition, it had to be replaced. The damage was so extensive, and the cost to repair
was such that Creditors were forced to rehabilitate the property and sell it, which was not
the creditor's intention. Debtor Webb not only cost the Creditors in actual cost to repair
the damage caused by debtor Webb and/or her legal occupants, but also a loss of future
equity to be gained had we been able to retain the property and continue utilizing it as a
rental property.

12.     Creditor's attempted to mitigate the cost of repairs, by purchasing items on sale,"
purchasing mid quality paints and materials, as well as purchasing coupons to use for
said purchases as often as possible and negotiating with the contractors to get the best
possible pricing, whenever possible. The amount debtor Webb was ordered was far less
than could have been, considering the extensive damage, that needed to be repaired, just
to return the property to a habitable state.

13.     Creditors are individual owners, we are not investors, and rents collected over the
life of debtor Webb's tenancy were not sufficient to cover the entire mortgage. Creditors
paid the difference in the mortgage costs every month and never made any profit during
debtor Webb's occupancy. All repairs that were required due to the damage caused by
debtor Webb, had to be paid by utilizing lines of credit. After 14 weeks of repair, the
home was brought to habitable condition and sold. Creditors would not have been able
to pay off the repairs for many years without the proceeds from the sale of the home.
Debtor Webb's negligence and disregard resulted in willful and malicious injury to the
property, and to the Creditors who suffered financial hardship repairing the damages
caused by debtor Webb.

Objection Re Case: 20-30776-KRH

## FIRST CLAIM FOR RELIEF

(For a Determination That Webb's Debt Is Not Dischargeable Pursuant to 11 U.S.C. §523{a)(6))

Creditor incorporates by reference the allegations contained in paragraphs 1-13 above as though set forth fully herein.

WHEREFORE, creditor prays for the entry of judgment against defendant as follows:

1. That the Court determine that the debt owed to creditor by defendant as a result of defendant's willful and malicious injury to creditor, is nondischargeable by virtue of the provisions of 11 U.S.C. §§ 523 (a)(6);

2. For costs of suit herein incurred; and

3. For such other and further relief as this Court deems just and proper.

Creditor:

Afrikka and LaVaniel Ennis Jr.

8218 Tatterton Trail

N. Chesterfield, VA 23237

Email: Afrikkaennis@gmail.com

Mobile: (804)677-2021


Re: Case 20-30776-KRH

Official Form 410 supporting documentation

We are currently owed $11,953.66 from Kevleena S. Webb.  We were granted a judgement in Chesterfield County General District court on April 4, 2019, of $11,545.87, for damages to our rental property at 7118 West Rd, Chesterfield, VA 23832 while Ms. Webb was a under lease as a tenant.  These damages, which were significant, were done by Ms. Webb and/or her children, who resided at this residence until November 10, 2018.  The judgement was granted after evidence to  support our claim, including pictures, testimony and receipts of expenditures, were presented to  and evaluated by the presiding judge.  Ms. Webb was present had ample opportunity to present a counter argument and/or mitigating factors.

**Judgement:** $11, 545.87

Interest thru 04/23 @ 6%: 2,770.80

Judgement cost: $56.00

Garnishment Cost: $92.00

Total: $14,464.67


We are *not* investors, we are a family that needed more space to  accommodate our family that grew from three to five during the time we lived at our home at 7118 West Rd. Because  we bought at the height of the housing boom, when it crashed two years later, we loss tens of thousands of dollars in equity and because we used a first time home buyer program through VHDA, found in later years we did not qualify to refinance under HARP. When we finally decided we needed to move, it was not financially feasible to  sell at that time, so we decided to  rent our home. Of course we wanted a family that would appreciate, and care for our home as we did. We hired a property manager to find such a family and handle the day to day of managing the  property.

As a child that grew up in a single mother household that experienced many periods of financial difficulty, I was fortunate to  benefit from a Section 8 housing voucher. I personally  know how challenging it can be to  find good, safe housing that accepts Section 8. I also know that there are many good tenants, many that have fallen on challenging circumstances that use this benefit.  So when we decided to  rent, I was willing and hopeful that we'd find such a tenant and I could pay my blessings

forward, in a small way. Ms. Webb was a wonderful tenant initially, but after a couple of years, she began to pay her portion of the lease late, she was late seven times in both 2017 and 2018. Though we were unaware at the time, we now realize this may have been connected to her bankruptcy filing in 2017. When she was late, we had to reach into our meager savings to cover her portion, to ensure that the mortgage at that home was paid on time. This was in addition to the fact that for the first few years of the lease, Section B's and Ms. Webb's payment did not cover the full mortgage and we were already paying that. When we finally asked Ms. Webb to vacate, the property, we were at the end of our patience and tired of the late payments.

Periodic inspections had been done by our property manager, as well as Section 8, so we were all shocked by the amount of damage Ms. Webb and her family had done to the property when we conducted the exit walkthrough. It was egregious. We quickly realized that we would not be able to touch up the home, and put it back on the rental market, as had been our intention. We quickly came to realize that we'd likely have to sell the property, we could not afford to return the home to a habitable state and re-rent, as we had just been breaking even and wouldn't be able to use rents to pay off the credit card balances that had been maxed out to repair the property. More than 12 weeks, and
$24K later, we put the home up for sale. While we did sell the home and were able to pay the bills incurred we were still out the cost of the repairs that were required due directly to the damages caused by the tenant as well as the future growth of an asset we fully intended to retain prior to these events. We sued the tenant, Ms. Webb, in Chesterfield General District court, to recoup our actual losses due to her neglect and damage to the property. We presented the evidence, in the form of pictures, receipts, and our testimony, and in addition we had our property manager and contractor, in the courtroom, willing to testify on our behalf. The judged looked at all the evidence and testimony presented, by both myself, my husband and Ms. Webb and provided some degree of decrement, as we were seeking approximately $15,000, and ruled that we were are entitled to $11,545,87.

I believe we are entitled to be made whole, with payment, in full, of this judgement, including interest, court costs, etc. as summarized, of $14,464.67, plus any future interest, as applicable, and have attached a copy of the judgement and the garnishment summons which support our claim. Please do not hesitate to contact us if any additional support documentation is required.

Sincerely,

Afikka L. Ennis                          9/14/23

LaVaniel D. Ennis Jr.                    9/22/23

**WARRANT IN DEBT** (CIVIL CLAIM FOR MONEY)

Commonwealth of Virginia    VA. CODE § 16.1-79

...... *Chesterfield County* ...........  General District Court
CITY OR COUNTY

...... *9500 Courthouse Rd, Chesterfield, VA 23832* ...........
STREET ADDRESS OF COURT

TO ANY AUTHORIZED OFFICER: You are hereby commanded to summon the Defendant(s).

TO THE DEFENDANT(S): You are summoned to appear before this Court at the above address on

*January 25, 2019 @ 830am* ...... to answer the Plaintiff(s)' civil claim (see below)
RETURN DATE AND TIME

*12·26·18*              *CV Jacuer*
DATE ISSUED        [ ] CLERK  [✓] DEPUTY CLERK  [ ] MAGISTRATE

**CLAIM:** Plaintiff(s) claim that Defendant(s) owe Plaintiff(s) a debt in the sum of

$ *10,035.70* ...... net of any credits, with interest at ........% from date of ............ until paid.

$ *56.00* ...... costs and $ ...*∅*... attorney's fees with the basis of this claim being

[ ] Open Account [ ] Contract [ ] Note [X] Other (EXPLAIN) *Recovery of*
*rent, damage/repair to property at 7118*
*West Rd, CHESTERFIELD, VA 23832*

HOMESTEAD EXEMPTION WAIVED? [ ] YES  [ ] NO  [ ] cannot be demanded

*12/26/2018*        *Afrikka L. Ennis*    *LaVaniel B.*
DATE        [✓] PLAINTIFF  [ ] PLAINTIFF'S ATTORNEY [ ] PLAINTIFF'S EMPLOYEE/AGENT

**CASE DISPOSITION**

JUDGMENT against [✓] named Defendant(s) [ ] ............

for $ *11,545.87* ...... net of any credits, with interest at ...*6*... % from date

of ...*DOJ*... until paid, $ *56.00* costs and $ ...*0*... attorney's fees

HOMESTEAD EXEMPTION WAIVED? [ ] YES [ ] NO [ ] CANNOT BE DEMANDED

[ ] JUDGMENT FOR [ ] NAMED DEFENDANT(S) [ ] ............

[ ] NON-SUIT [ ] DISMISSED ............

Defendant(s) Present? [✓] YES ............
[ ] NO

*4/4.9*                    *Kevin Hull*
TE                        JUDGE

---

CASE NO. *V18024642-00*

PLAINTIFF(S) (LAST NAME, FIRST NAME, MIDDLE INITIAL)
*Ennis, AFRIKKA L.*
*Ennis Jr., LaVaniel D.*
*8218 Tatterton Ter.*
*N. CHESTERFIELD, VA 23231*

v.

DEFENDANT(S) (LAST NAME, FIRST NAME, MIDDLE INITIAL)
*KAVLEENA WEBB*
*3268 SNEAD Ct*
*RICHMOND, VA 23224*

SUBSTITUTE SERVICE ON: *Sibling*

**WARRANT IN DEBT**
* * *

TO DEFENDANT: You are not required to appear; however, if you fail to appear, judgment may be entered against you. See the additional notice on the reverse about requesting a change of trial location.

[ ] To dispute this claim, you **must** appear on the return date to try this case.

[✓] To dispute this claim, you must appear on the return date for the judge to set another date for trial.

Bill of Particulars ...... *2/7/19*
ORDERED        DUE

Grounds of Defense ...... *3/8/19*
ORDERED        DUE

ATTORNEY FOR PLAINTIFF(S)
............
............

ATTORNEY FOR DEFENDANT(S)
............
............

---

**HEARING DATE AND TIME**

*1-25-19*
*830am*

@ *4/4/19 c*
*2:00*
*30 min*

---

JUDGMENT PAID OR SATISFIED PURSUANT TO ATTACHED NOTICE OF SATISFACTION.

DISABILITY ACCOMMODATIONS for loss of hearing, vision, mobility, etc., contact the court ahead of time.

**BILL OF PARTICULARS**
Commonwealth of Virginia   Rule 7B:2

Case No. GV18020042-00

4/4/19   2:00
TRIAL DATE AND TIME

*Chesterfield County*
CITY OR COUNTY                                     General District Court

*9500 Courthouse Rd, Chesterfield, VA 23832*
STREET ADDRESS OF COURT

*Afrikka + LaVaniel Ennis Jr.*   v.   *KAVLEENA WEBB*
PLAINTIFF                                          DEFENDANT

**TO THE PLAINTIFF:**

You are required to file with the court, and serve by mailing, a written BILL OF PARTICULARS by ........ 2/7/19
DATE

The defendant's written GROUNDS OF DEFENSE is due to be filed with the court and served by mailing by ........ 3/8/19
DATE

You are further required to fully state, in the numbered paragraphs below, each of the reasons/grounds why you think the defendant owes you the money or property claimed. You may attach additional paper if needed.

1. Defendant owes the following due to excessive damage caused by defendant and/or her occupants to leased property. All costs to repair damage can be found in attachment for property at 7118 WestR, Chesterfield, VA 238

2. Whole house carpeting (padding &) had to be replaced ~~by~~ due to ~~excessive damage~~ (See attachment)

3. whole house walls, doors, trim had to be repaired + repainted due to excessive damage (see attachment). Kitchen flooring + hall bath flooring had to be replaced due to condition (see attachment)

4. Plaintiff (s) seeking - all material and labor costs related to returning property to habitable state (see attachment)

5. Total damages sought $ 13,195.87 (See attachment)

[x] See continuation sheet.

**NOTICES:** Failure to comply with this order may be grounds for awarding summary judgment in favor of the adverse party. Both parties must be prepared, at trial, to prove their case with admissible evidence. Upon trial, the judge may exclude evidence as to matters not described in this pleading.

1-25-19
DATE

[x] PLAINTIFF   [ ] PLAINTIFF'S ATTORNEY

*AFRIKKA ENNIS + LAVANIEL ENNIS Jr.*
PRINT NAME

ADDRESS /TELEPHONE NUMBER OF SIGNATOR

**PLAINTIFF'S CERTIFICATE**

I certify that I delivered or mailed a completed copy of this BILL OF PARTICULARS to the clerk of this court and ...ed to each attorney for the defendant, or to the defendant if not represented.

..25.. day of January ...., 20 19

SIGNATURE OF [x] PLAINTIFF [ ] PLAINTIFF'S ATTORNEY

RECEIVED AND FILED
CHESTERFIELD GEN. DIST. COURT
TIME 12:51 pm
JAN 25 2019
TESTE: Freeman
CLERK/DEPUTY CLERK

44 2 MASTER 05/09

| General Contractor Labor (Barbara Gaines-Williams) | Cost | Outside Contractor Labor | Cost |
|---|---|---|---|
| Labor for Painting (walls, doors, trim, repair) | $3,000.00 | Carpet replacement/Installation (L&M) | $2,851.36 |
| Labor for Painting (Ceiling) | $500.00 | Kitchen Floor replacement(material) | $444.00 |
| Labor to replace upstairs vanity tops/plumbing | $350.00 | Kitchen Floor replacement (Install) +$35 move fridge | $239.00 |
| Labor for Cabinet Rehab | $1,000.00 | Hall Bath floor replacement material @ 70 sq ft | $94.50 |
| Kitchen Floor removal/clean up | $100.00 | Hall Bath floor replacement (Install) +$85 move toilet | $144.50 |
| Kids bedroom fan removal/Install | $75.00 | Toilet repairs (warranty fee) | $200.00 |
| Whole House cleaning | $300.00 | Diswasher warranty call (unable to repair) | $100.00 |
| Carpet removal | $225.00 | | |
| Misc repairs | $350.00 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total | $5,900.00 | Total | $4,073.36 |
| | | | |
| | | | |
| | | | |
| Costs associated with rehab from tenant damage | | Final Total | $14,845.87 |
| to 7118 West Rd, Chesterfield, VA 23832 | | Minus Deposit | -$1,650.00 |
| | | Owed by Tenant | $13,195.87 |

| Material | Cost | | Material expenses (contractor incurred) | Cost | | Rent monies | Amount |
|---|---|---|---|---|---|---|---|
| Single vanity replacement (1) | $170.10 | | Paint supplies SW 11/28/18 | $69.13 | | Nov 1-10 (prorated rent) | $566.67 |
| Double vanity replacement (1) | $197.10 | | paint brush set 11/21/18 | $1.00 | | Rent loss due to damages | $1,700.00 |
| Bedroom fan replacement (1) | $40.63 | | Clorox 12/19/18 | $2.25 | | Oct-18 | $79.20 |
| Doorbell (1) | $6.98 | | Misc Lowes 12/04/18 | $20.77 | | Late fee for October | $76.60 |
| Vanity side splash (mstr bath) (1) | $22.00 | | misc Home depot 12/26/18 | $25.63 | | | |
| Vanity side splash (hall bath) (1) | $20.85 | | misc Home depot 11/24/18 | $32.05 | | | |
| Sliding Screen door (1) | $55.80 | | Misc Lowes 12/20/18 | $18.46 | | | |
| Screen Door handle | $13.48 | | Paint Supplies SW 12/08/18 | $25.51 | | | |
| Replacement door stoppers (4) | $7.12 | | Paint supplies SW 12/19/18 | $15.57 | | | |
| Replacement bath drain (2) | $21.96 | | Paint Supplies SW 12/08/18 | $114.79 | | | |
| Garage door openers (2) | $55.76 | | Joint compound HD 12/20/18 | $8.76 | | | |
| Carbon Monoxide detectors (2) | $71.94 | | | | | | |
| Toilet paper holder (1) | $8.26 | | | | | | |
| Paint and Equipment | $804.21 | | | | | | |
| Misc damage | $200.00 | | | | | | |
| garbage disposal | $100.00 | | | | | | |
| Bathroom drain kit (2) | $25.98 | | | | | | |
| Bathroom replacement faucets (3) | $82.65 | | | | | | |
| Towel Bar (2) | $19.98 | | | | | | |
| Household disposal | $68.00 | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Subtotal | $1,992.80 | | Subtotal | $333.92 | | Total | $2,422.47 |
| Plus VA tax rate of 5.3% | $105.62 | | Plus VA tax rate of 5.3% | $17.70 | | | |
| Total | $2,098.42 | | Total | $351.62 | | | |

**GARNISHMENT SUMMONS**
Commonwealth of Virginia  Va. Code §§ 8.01-511, 8.01-512.3

~~COPY~~

Chesterfield County General District Court
**COURT NAME**
9500 Courthouse Rd, Chesterfield, VA 23832
**COURT ADDRESS AND TELEPHONE NUMBER**

TO ANY AUTHORIZED OFFICER: You are hereby commanded to serve this summons on the judgment debtor and the garnishee.

TO THE GARNISHEE: You are hereby commanded to (1) file a written answer with this court, or (2) deliver payment to this court, or (3) appear before this court on the hearing date and time shown on this summons to answer the Suggestion for Summons in Garnishment of the judgment creditor that, by reason of the lien of writ of fieri facias, there is a liability as shown in the statement upon the garnishee.

As garnishee, you shall withhold from the judgment debtor any sums of money to which the judgment debtor is or may be entitled from you during the period between the date of service of this summons on you and the date for your appearance in court, subject to these limitations: (1) The maximum amount which may be garnished is the "TOTAL BALANCE DUE" as shown on this summons. (2) You shall not be liable to the judgment creditor for any property not specified in this garnishment summons. (3) If the sums of money being garnished are earnings of the judgment debtor, then the provision of "MAXIMUM PORTION OF DISPOSABLE EARNINGS SUBJECT TO GARNISHMENT" shall apply.

If a garnishment summons is served on an employer having one thousand or more employees, then money to which the judgment debtor is or may be entitled from his or her employer shall be considered those wages, salaries, commission or other earnings which, following service on the garnishee-employer, are determined and are payable to the judgment debtor under the garnishee-employer's normal payroll procedure with a reasonable time allowance for making a timely return by mail to this court.

| DATE OF ISSUANCE OF SUMMONS | CLERK |
|---|---|

| DATE AND TIME OF DELIVERY OF WRIT OF FIERI FACIAS TO SHERIFF IF DIFFERENT FROM DATE OF ISSUANCE OF THIS SUMMONS | TO GARNISHEE: On check or written answer, include return date, case number and judgment debtor's name. MAKE CHECK PAYABLE TO JUDGMENT CREDITOR AND DELIVER TO THE COURT. |
|---|---|

**WRIT OF FIERI FACIAS TO ANY AUTHORIZED OFFICER:** You are commanded to execute this writ and to make from the intangible personal estate of the judgment debtor(s) the principal, interest, costs and attorney's fees, less credits, shown in the Garnishment Summons. You are further commanded to make your return to the clerk's office according to law.
Homestead Exemption Waived? [ ] yes  [ ] no  [ ] cannot be demanded

| DATE OF ISSUANCE OF WRIT | CLERK |
|---|---|

**CASE DISPOSITION**

I ORDER that
[ ] the garnishee pay to the judgment creditor through the court $ ...................... net of any credits.
[ ] the case be DISMISSED.
[ ] ...........................................................................

| DATE ENTERED | JUDGE |
|---|---|

FORM DC-451 (FRONT) 1/07   (A181075 9/17)

---

| CASE NO. GV18024042-00 | HEARING DATE & TIME |
|---|---|

AFRIKKA Y LAVANIEL ENNIS
**JUDGMENT CREDITOR'S NAME**
8218 Tattertotr Ter
**STREET ADDRESS**
N. Chesterfield, VA 23237
**CITY, STATE, ZIP**
804-496-1388
**TELEPHONE NUMBER**

N/A
**JUDGMENT CREDITOR'S ATTORNEY'S NAME**

**ADDRESS**

**TELEPHONE NUMBER**

KAVLEENA WEBB
**JUDGMENT DEBTOR'S NAME (SERVE)**
3268 Snead Ct
**STREET ADDRESS**
RICHMOND, VA 23224
**CITY, STATE, ZIP**
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    804 475-2331
**SOCIAL SECURITY NUMBER       TELEPHONE NUMBER**

Greyhound Lines Inc
**GARNISHEE'S NAME**
c/o CT corporation system 4701 Cox Rd
**STREET ADDRESS**            Ste # 285.
Glen Allen, VA 23060-6801
**CITY, STATE, ZIP**
4/4/19     804-217-7255
**DATE OF JUDGMENT        TELEPHONE NUMBER**

**STATEMENT**

| | |
|---|---|
| $ 11,545.87 | Judgment Principal |
| 30.00 | Credits |
| 6.46 | Interest |
| $ 56.00 | Judgment Costs |
| $ 92.00 | Attorney's Fees |
| | Garnishment Costs |

11,953.46 **TOTAL BALANCE DUE**
The garnishee shall rely on this amount.

HEARING DATE & TIME
10/28/19
8:30 AM

**GARNISHMENT SUMMONS**

This is a garnishment against (check only one)
[ ] the judgment debtor's wages, salary or other compensation.
[ ] some other debt due or property of the judgment debtor, specifically, ...........
..................................................

MAXIMUM PORTION OF DISPOSABLE EARNINGS SUBJECT TO GARNISHMENT
[ ] Support
[ ] 50%  [ ] 55%
[ ] 60%  [ ] 65%
(if not specified, then 50%)
[ ] state taxes, 100%

If none of the above are checked, then § 34-29(a) applies (a plain-language interpretation of this section is on the reverse of this GARNISHMENT SUMMONS).

$ ..................................
received by

**JUDGMENT CREDITOR**
[ ] Judgment debtor present

................................
DATE

# SUGGESTION FOR SUMMONS IN GARNISHMENT

Commonwealth of Virginia    Va. Code § 8.01-511

*Chesterfield County* ................... General District Court

CITY OR COUNTY

| | CASE NO. | RETURN DATE |
|---|---|---|
| | GV18024042-00 | |

### SUGGESTION FOR SUMMONS IN GARNISHMENT

**AFRIKKA + LAVANIEL ENNIS**
JUDGMENT CREDITOR'S NAME

**8218 Tatterton Ter**
STREET ADDRESS

**N. Chesterfield, VA 23237**
CITY                    STATE        ZIP

**804-496-1388**
TELEPHONE NUMBER

**N/A**
JUDGMENT CREDITOR'S ATTORNEY'S NAME

STREET ADDRESS

CITY                    STATE        ZIP

TELEPHONE NUMBER

**KAVLEENA WEBB**
JUDGMENT DEBTOR'S NAME

**3268 Snead Ct**
STREET ADDRESS

**Richmond, VA 23224**
CITY                    STATE        ZIP

**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    804-475-2237**
SOCIAL SECURITY NUMBER          TELEPHONE NUMBER

**Greyhound Lines Inc**
SUGGESTED GARNISHEE'S NAME (SEE NOTE BELOW)

**2910 N. Arthur Ashe Blvd**
STREET ADDRESS

**Richmond, VA 23230**
CITY                    STATE        ZIP

**804-254-5912**
TELEPHONE NUMBER

If garnishee is judgment debtor's employer, please furnish employer's name, and state whether it is a corporation, or one or more persons trading under a fictitious or trade name.

## ORIGINAL JUDGMENT

| DATE OF JUDGMENT | DATE EXECUTION ORDERED |
|---|---|
| 4/4/19 | 4/4/19 |

CITY OR COUNTY WHERE JUDGMENT ENTERED

*Chesterfield County*

### STATEMENT

$ **11,545.87** Judgment Principal
  **0.00** Credits (see reverse)
  **350.79** Interest at **0** % to return date
  **56.00** Judgment Costs
  **0** Attorney's Fee
$ **92.00** Garnishment Costs
$ **11,953.66 DC**

$ **11,953.87 DC**  Total Balance Due
The garnishee shall rely on this amount.

MAXIMUM PORTION OF DISPOSABLE EARNINGS
SUBJECT TO GARNISHMENT

[ ] Support (if not specified, then 50%)

[ ] 50%  [ ] 55%  [ ] 60%  [ ] 65%  [ ] State Taxes, 100%
If none of the above are checked, then § 34-29(a) applies (a plain-language interpretation of this section is on the reverse of the SUMMONS).

I request the Clerk to summon the Suggested Garnishee to answer this suggestion.

This is a garnishment against (check only one) [✓] the judgment debtor's wages, salary or other compensation. [ ] some other debt due or property of the judgment debtor, specifically ........................................................................

I have reason to believe that there is a liability on the suggested garnishee because of the execution on the "ORIGINAL JUDGMENT" described above.  I certify that:

[✓] (1) The summons is based upon a judgment upon which a prior summons has been issued but not fully satisfied; or

[ ] (2) No summons has been issued upon this judgment creditor's suggestion against the same judgment debtor within a period of eighteen months, other than a summons which was based upon a judgment upon which a prior summons has been issued but not fully satisfied; or

[ ] (3) The summons is based upon a judgment granted against a debtor upon a debt due or made for necessary food, rent, or shelter, public utilities including telephone service, drugs, or medical care supplied the debtor by the judgment creditor or to one of his or her lawful dependents, and that it was not for luxuries or nonessentials; or

[ ] (4) The summons is based upon a judgment for a debt due the judgment creditor to refinance a lawful loan made by an authorized lending institution; or

[ ] (5) The summons is based upon a judgment on an obligation incurred as an endorser or comaker upon a lawful note; or

[ ] (6) The summons is based upon a judgment for a debt or debts reaffirmed after bankruptcy.

I hereby certify that the last known address of the defendant is as shown at right.

[ ] I represent that I have made a diligent, good faith effort to secure the social security number of the judgment debtor and have been unable to do so.

**4/24/19**
DATE SUBMITTED

[X] JUDGMENT CREDITOR  [ ] AGENT  [ ] ATTORNEY

WARNING:  Any judgment creditor who knowingly gives false information in a Suggestion for Garnishment shall be guilty of a class 1 misdemeanor

FORM DC-450 (FRONT) 07/12    (A124186 6/12)

From the Desk of Dr. Paula A. Tucker, PhD.
7112 West Road
Chesterfield, Virginia 23832-8466
(804) 652-5351-Cell

To whom it may concern:

This letterhead is to share tangible information in the case of Mrs. Afrikka Ennis and her home located at 7118 West Road, Chesterfield, Virginia 23832-8466, that was occupied by Ms. Lena and her family.

During the moving date in November 2018, I stopped by to bid Ms. Lena farewell and much peace with her move. At that time she invited me in and we walked through the home. Upon my entry I noted a **large black couch** in the kitchen and dining room area...and I questioned Ms. Lena about same – she stated that she was not finish with the move and she would return to **take out the couch and other items in the garage. I never saw her return to retrieve the items.**

After such, we proceeded to the upper level of the home to see if we could note where the major water leak was coming from that had **destroyed the ceiling in the dining room area.** We noted that there was **a major water flow in the upstairs bathroom floor area – and Ms. Lena stated that she keep the toilet off due to the water leakage. I then stated that this water leak should have been reported to Mrs. Afrikka for repair. Nothing further was stated about the bathroom.**

We then walked over the largest bedroom in the home that sits over the garage area. As soon as I walked in the room I noted a **large red stain in the carpet.** I asked Ms. Lena what was the stain – she stated that **one of her girls split dye on the carpet.** I stated to her this is bad and same perhaps will not come out. I also stated that Mrs. Afrikka can charge you for the damages of the stain carpet.

During Ms. Lena's tenure in the home of 7118 West Road, with her 6 children and 1 grandchild – the traffic **was always heavy in the cul-de-sac due to her children rendering services for make-up do over and cosmetologist practices.** We all in the cul-de-sac would work through the issues of traffic – or ask the visitors to move their vehicles off the grass as well as, not to block driveways and mailboxes.

In honoring Ms. Lena as a single mom of 6 children – she worked steadily week in and week out to maintain monetary factors to support the household. During her job duties the 6 children (3) adults now and (3) middle school and elementary school age – managed to care for each other without crisis in the home.

In closure I would have to posit that the carpet stain, leaving of old furniture, allowing a leakage to damage the ceiling, heavy stains on the walls, **as well as failure to take due CARE of the rental property was very noticeable and the home needed repairs.**

*Kindest regards,*

Paula A. Tucker, PhD.

*7118 West Rd property mgmt statement*



# RVA
## Rental Properties
*The Key to Renting Your Property*

To Whom It May Concern:

My name is Candice Bolt, I am the owner and property manager of RVA *Rental Properties, LLC* we have been in business since June of 2014 I am a licensed agent but only practice property management I do not do sales or listings.  Our goal is to give our tenants the best possible homes to live in with the best possible experience and to give our landlords the customer service and dedication they deserve from a management company.

Kevleena Webb became a tenant of 7118 West Road Chesterfield, VA 23832, July 29, 2014 and moved out November 2018.  At the time of the move in, *the house had been professionally* cleaned, the walls were freshly painted, ceiling in the kitchen freshly painted and the house was in excellent condition. RRHA inspection the home and other than an electrical outlet that needed repair in the kitchen the house was in perfect condition for move in.

The owner Afrikka Ennis and Levaniel Ennis had a home warranty on the property and per the lease the owners would pay up to three trade fees for the tenant for any repairs on the property.  During the time of Kevleenas tenancy the warranty company was called for numerous items including the stove, air *conditioner* several times, water heater, dryer, garage door and other items, each time regardless of the agreement made between the owners and tenant, Afrikka would pay the trade fee without hesitation.

Afrikka was always quick to make sure maintenance issues were resolved at the property, everything from the outside steps needing repair to the front door being replaced.  Afrikka was always conscientious and courteous to her tenants.

Both Afrikka and myself had *been in the home numerous* times and always complimented the tenant on how well kept the house was. When our management team would go to the property to do walk throughs we were never able to meet with Kevleena but we did meet with her daughters several times, who were always pleasant and would be doing what looked like professional hair coloring and styling.

On several occasions during the tenancy the tenant would make derogatory remarks about the Ennis family getting too much rent for the home and she could have bought the house for what she paid in rent.  She mentioned *talking to the neighbors about* what she was paying in rent and she would let me know they all agreed she was paying too much and she didn't think it was fair.  The rent amount was $1,650 and  Afrikka did not go up in rent during Kevleenas tenancy, fair market analysis in 2016 for a house that size was $1800 a month.

During her four year tenancy with us, she rarely paid her portion of the rent on time, Afrikka would not charge her late fees more than half the time so she could get caught up on her rent.

Our last walk through inspection was conducted in August before she moved out, I was in the kitchen talking with her daughter while she did someone's hair, there was no mention of a leak in the ceiling of the kitchen and at that time and I saw no signs of any damage. In January she had discussed with us that she received a notice from the water department that there may be a leak at the property, we told her to call the water department, she said she figured out it was the toilet that was running and she turned it off and it was not an issue and did not mentioned it to us again. We were incredibly shocked to go to the exit inspection to see water all over the upstairs bathroom floor and significant damage to the kitchen ceiling.

It is my belief the tenant became upset when we were not going to renew her lease, she allowed the toilet to leak onto the bathroom floor causing damage to the kitchen ceiling, the carpet was stained beyond repair with hair dye, the house was in complete disarray so upsetting for my owner after she had been so supportive of this tenant for years. The tenant left garbage through-out the home, left the house incredibly dirty all the carpets were destroyed beyond repair the cabinets under every sink in the home were ruined it was obvious at the exit inspection that there was thousands of dollars worth of damage.

I tried several times to set up an exit inspection with the tenant so she could be present, she tried to get her Aunt to meet me but I needed someone that was on the lease to be there. We had set up two separate times and she didn't show up for either of them. I continued to try and accommodate her but it was apparent she was trying to be difficult and did not want to meet us at the home.

Sincerely,

10/9/19

Candice Bolt
RVA Rental Properties, LLC
Licensed in the Commonwealth of Virginia
rentals@rvahomes.com

LAURA SHANNON WACKS
COMMONWEALTH
REGISTRATION NO.
7779113
MY COMM. EXPIRES:
12/31/2022
OF VIRGINIA
NOTARY PUBLIC

Chesterfield County, VA
My commission expires 12/31/2022
Reg Number 7779113

 

## VIRGINIA ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASE
**(This is a legally binding contract. If not understood, seek competent advice before signing.)**

EFFECTIVE DATE OF LEASE: _____ 07/29/14

This Property will be shown and made available to all persons without regard to race, color, creed, religion, national origin, sex, familial status, handicap or elderliness in compliance with all applicable and federal, state and local fair housing laws and regulations.

THIS LEASE AGREEMENT (the "Lease") is made as of the __29__ day of __July__, __2014__, by and between __Levaniel Ennis__ __Afrikka Ennis__ ("Landlord") whose address is __JE__ through __RVA Rental Properties, LLC__ ("Landlord's Broker," who represents Landlord) whose address is __1231 Alverser Drive,__ __Midlothian__ __VA__ __23113__ ; and __Xavleena Webb__ ("Tenant"); represents Tenant). Landlord's Broker is sometime hereinafter referred to as "Agent".

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained therein, Landlord and Tenant agree as follows:

Landlord does hereby lease and demise unto Tenant, and Tenant does hereby lease and take from Landlord the Dwelling Unit hereinafter described (the "Dwelling Unit") on the terms and conditions set forth in this Lease.

1.   SUMMARY OF LEASE TERMS:

    a.   Address of Dwelling Unit:
        7118 West Road
        Chesterfield VA 23832

    b.   Term

        Commencement Date of Lease: _____07/29/14_____ at __12__ ☐ am OR ☒ pm
        Length of Term is:
        Lease Term Ends: _____07/31/15_____ at __12__ ☐ am OR ☒ pm

    c.   Rent

| | | |
|---|---|---|
| Monthly Rent: | $ | 371.00 |
| Per Diem Rent: | $ | 11.96 |
| Prorated Rent (for period from __29__ to __31__ ): | $ | 35.88 |

*821.88* (handwritten)

Additional Rent:

| | | |
|---|---|---|
| Non-Refundable Lease Fee: | $ | |
| Non-Refundable Pet Fee, if applicable: | $ | |
| Non-Refundable Unauthorized Pet Fee: ($_____ ), if applicable | | |
| Pet Rent, if applicable: | $ | |
| Damage Insurance: | $ | |
|   Actual cost of policy: | $ | |
|   Administrative fee: | $ | |
|   Opt-out fee: | $ | |
| Renter's Insurance: | $ | |
|   Actual cost of policy: | $ | |
|   Administrative fee: | $ | |
|   Opt-out fee: | $ | |
| Other _____: | $ | |
| Other _____: | $ | |
| Other _____: | $ | |

VAR FORM 200  REV. 07/14               PAGE 1 OF 14

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



Total Rent:                                    $         371.00
(Rent may be increased pursuant to the terms of this Lease)
Late Fee:        10% of the total Monthly Rent, or $50.00, whichever is greater.

d.  Monthly Rent to be payable to ~~Savario~~ Lernnie & Afrikka Ennis                    ,
    located at c/o RVA Rental Properties, 1231 Alverser Drive,
    Midlothian, VA 23113

e.  Description of Dwelling Unit:
    Unit Type                    sing fam   Number of Baths:    2.5
    Number of Bedrooms              4       Other:     2-car garage

f.  Appliances and other personal property provided: oven, washer/dryer,
    fridge, garbage disposal, microwave, security system,
    2-garage door openers, dishwasher, window treatments

g.  Occupancy of the Dwelling Unit shall be limited to    6    persons whose
    names other than Tenant are as follows ("Occupants"): Brianna Webb,
    Ryan Webb, Angel Webb, Taleia Webb, Antwinnette Webb,
    Randy Forbes

h.  i) Utilities provided by Landlord and included in Rent: none

    ii) Utilities that Tenant must obtain individually: water/sewer, gas, electric,
    cable, internet, phone, trash, security system
    iii) Utilities provided by Landlord, and billed separately to Tenant: none

i.  Security Deposit:

    Move-In Security Deposit:              $.              371.00
    Pet Deposit:                           $
    Total Security Deposit:                $               371.00
    Security Deposit will be held by [ ] Landlord OR [x] Agent.

j.  Cancellation and Renewal of Lease: Either party may terminate this Lease effective as of
    the end of the then-existing Term by giving the other party written notice at least
    ___Sixty____ (_60_) days before the end of the then-existing Term. If no such
    notice of termination is given, the Term of this Lease shall be extended for self-renewing
    terms of ____sixty days____.  If Landlord intends to change the terms or
    conditions of this Lease, including increasing the Rent, for any renewal term thereafter,
    Landlord will give Tenant written notice at least ___60___ days prior to the end of the
    then applicable term.

2.  **APPLICABLE VIRGINIA LAW.** This landlord tenant relationship is in accordance with Chapter 13.2 of Title 55 of the
    Code of Virginia (1950), as amended, generally known as the Virginia Residential Landlord Tenant Act (the
    "VRLTA").

3.  **SECURITY DEPOSIT.** Tenant has deposited the amount shown in Section 1(i) as a Security Deposit, to secure a
    complete and faithful performance by Tenant of all terms and conditions of this Lease, and the obligations imposed
    on Tenant by applicable Virginia Law.

a.  Disposition. Pursuant to the VRLTA, Landlord may apply all or part of the Security Deposit to the payment
    of accrued Rent and the amount of any damages that have been suffered by Landlord, including but not
    limited to, physical damages, appropriate charges to Tenant not previously reimbursed to Landlord, charges
    that may be due by Tenant to third-party utility providers in accordance with the provisions of Section 55-
    248.15:1(A) of the VRLTA, and actual damages for breach of this Lease, including attorneys' fees and costs.
    Landlord shall have the right to apply the Security Deposit to any outstanding fees, charges or other
    amounts due first, and then to any unpaid Rent. Within forty-five (45) days after termination of the tenancy
    and return of possession of the Dwelling Unit by Tenant to Landlord, Landlord will provide Tenant with an

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the
Central Virginia Regional MLS.

InstaNet forms

itemized listing of all deductions made from the Security Deposit, and with payment of any amount due to Tenant. If Tenant complies with all terms and conditions of the Lease and with the VRLTA, Landlord will return to Tenant the Security Deposit, together with any accrued interest if required by law, within forty-five (45) days after termination of the tenancy and return of possession of the Dwelling Unit to Landlord by Tenant. If the damages to the Dwelling Unit exceed the amount of the Security Deposit and require the services of a third-party contractor, Landlord shall give written notice to Tenant advising of the fact within a forty-five (45) day period. If such notice is given, Landlord shall have an additional fifteen (15) day period to provide an itemization of the damages and the cost of repair. Any interest earned on the Security Deposit in excess of that amount that Landlord is required to pay to Tenant under the VRLTA will be retained by Agent to cover administrative costs. However, on or after January 1, 2015, there shall be no interest due are payable on security deposits held under this Lease and in accordance with the VRLTA. Any accrued interest due and payable as of December 31, 2014, shall be paid to Tenant no later than forty-five (45) days after termination of the tenancy and return of possession of the Dwelling Unit by Tenant.

b.  Forwarding Address. Tenant shall provide Landlord written notice prior to vacating the Dwelling Unit of the forwarding address so that Landlord can forward to Tenant a statement explaining the disposition of the Security Deposit prior to the end of the 45-day period provided herein. If Tenant fails to give notice of a forwarding address, Landlord will send the Security Deposit statement to the last known address of Tenant, but will retain the Security Deposit refund, if any, until Tenant notifies Landlord of the appropriate address. If no forwarding address is provided to Landlord, upon the expiration of one year from the date of the end of the 45-day time period, the balance of such security deposit shall escheat to the Commonwealth of Virginia, in accordance with Section 55-248.15:1 of the VRLTA. Upon payment to the Commonwealth, Landlord shall have no further liability to any Tenant relative to the security deposit.

c.  Multiple Tenants. Where more than one Tenant signs this Lease, a deduction to be made from the Security Deposit will be joint and several, and Landlord is not liable for any understanding that may exist between two or more Tenants as to the portion of the Security Deposit that one Tenant may be entitled to, as opposed to another Tenant. Landlord will draw one check payable to all Tenants jointly, or at Landlord's election, to any one Tenant who shall be responsible for distribution to the other Tenants, and forward same to forwarding address provided to Landlord by written notice as required herein.

d.  Move-Out Inspection. Under the VRLTA, Landlord will make reasonable efforts to provide Tenant with notice of a right to be present at the move-out inspection. Landlord will include in the vacating notice language to inform Tenant of this right to be present. Tenant must make a written request to Landlord to be present at such an inspection, and Landlord will notify Tenant of the inspection times which will occur within 72 hours of the termination of the tenancy. If Tenant fails to make such a request, or fails to schedule an inspection, Landlord will proceed to do the check-out inspection without Tenant being present.

e.  Setoff Prohibited. Tenant shall have no right to deduct the Security Deposit from the rental payment for the last month of any term of this Lease.

f.  Landlord's Successor Obligated for Security Deposit. If Landlord in any way transfers its interest in the Dwelling Unit, or if the Agent transfers management of the Dwelling Unit and the apartment community in which the Dwelling Unit is located (the "Premises"), to a third party, Agent or Landlord, as the case may be, may transfer the Security Deposit to the transferee and both are thereafter released from all liability for the return of the Security Deposit to Tenant. If such a transfer occurs, Tenant agrees to look to the transferee solely for the return of the Security Deposit and to release Landlord and/or Agent, as the case may be, from all obligations and liability relating thereto.

g.  Damage Addendum. The Damage Addendum, attached hereto and incorporated by reference herein, establishes a tentative schedule of standard deductions to be utilized by Landlord in assessing charges against Tenant for physical damages to the Dwelling Unit or the Premises, less reasonable wear and tear. Landlord reserves the right to alter the said schedule if the repair costs should become higher than those listed thereon. Landlord further reserves the right to assess against Tenant for such damages the actual costs of the materials and repairs, if there is a variance between the tentative schedule and the actual bill for such materials and repairs. The Damage Addendum also establishes the tentative schedule for charges to be made by Landlord against Tenant during the Term of the tenancy for any damages as may occur.

Landlord reserves the right to require a commercial insurance policy commonly known as "damage insurance" to secure the performance by Tenant of the terms and conditions of this Lease, in lieu of all or part of the security deposit, as provided in Section 55-248.7:2 of the VRLTA. The actual costs of any damage insurance policy and the administrative fee as set forth in Section 1(c) shall be charged to the Tenant as additional rent. Tenant shall have the option to purchase their own damage insurance policy, provided the policy otherwise meets the requirements of this paragraph, in which case Tenant shall be charged the monthly opt-out fee specified in Section 1(c). For any damage insurance policy obtained by Tenant in accordance with this paragraph, Tenant agrees to maintain such policy in full force and effect for the full term of this Lease, including any extensions or renewals thereof, and to provide Landlord

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



sufficient proof of such insurance.    Any damage insurance policy provided by Landlord shall terminate contemporaneously with the termination of this Lease.

4.    **RENT.**

   a.    Rent Payments.    The total Rent for the initial Term of this Lease is set out in section 1(c) of this Lease. Monthly payments of Rent are payable in advance, without demand, and in full without prorating or setoff, on the first day of each calendar month and shall be paid to at the address set forth in section 1(d) above or at such other places as Landlord may designate by advance written notice to Tenant.  Landlord is authorized to accept prepaid Rent in accordance with the provisions of the VRLTA. Landlord will provide Tenant a written receipt upon the request of Tenant, if Tenant pays rent in the form of cash or a money order (if allowed by Landlord).  Upon the written request of Tenant, Landlord shall provide Tenant with an accounting of charges and payments in accordance with Section 55-248.7 of the VRLTA.

   b.    Late Payment.    If the rental payment is received after the 5th day of the month, a Late Fee in the amount specified in section 1(c) of this Lease will be assessed against Tenant. Any rental payment received after legal action has been initiated by Landlord will be accepted with reservation and will be applied to delinquent rent due, but will not affect any legal action instituted by Landlord against Tenant to recover delinquent rent and possession of the Dwelling Unit.

   c.    Returned Checks.    Landlord reserves the right to require that all monthly installments be made by money order or certified funds, or to require automatic or electronic payment.  Checks that are returned for insufficient funds or otherwise, or failed electronic funds transfer, will result in the following charges, in addition to the late charges specified herein and the face amount of the check or electronic funds transfer, and all other amounts recoverable by Landlord pursuant to this Lease or by law: (i) a reimbursement of any bad check return or failed electronic funds transfer fee charged by the bank; (ii) a bad check or failed electronic funds transfer processing fee in the amount of $50; (iii) legal interest from the date of the check or transfer; and (iv) a civil recovery not to exceed $250.

   d.    Rent is Inclusive.    As used in this Lease and under the VRLTA, "Rent" means all money, other than a security deposit, owed or paid to Landlord under this Lease, including prepaid Rent paid more than one month in advance of the Rent due date.

5.    **INSPECTION AND CONDITION OF DWELLING UNIT.**

   a.    Move-In Inspection Report.    Tenant has made an inspection of the Dwelling Unit, and Tenant agrees that the Dwelling Unit is in a fit and habitable condition, except for such damages as have been itemized in a written "Residential Move-In Move-Out Inspection Report", a copy of which will be submitted by Landlord to Tenant within five (5) days after occupation of the Dwelling Unit by Tenant.  The Residential Move-In Move-Out Inspection Report will be deemed correct unless Tenant objects to it in writing five (5) days after Landlord has provided same to Tenant.  Tenant hereby acknowledges that the Residential Move-In Move-Out Inspection Report reflects that there is no visible evidence of mold in the Dwelling Unit or that portion of the Premises which is occupied by Tenant. If the Landlord's Residential Move-In Move-Out Inspection Report states that there is visible evidence of mold in the Dwelling Unit, Tenant shall have the option to terminate the Lease or remain in possession of the Dwelling Unit. If Tenant elects not to terminate the Lease, notwithstanding the presence of visible evidence of mold, Landlord shall promptly remediate the mold condition, but in no event later than five business days thereafter, and re-inspect the Dwelling Unit to confirm there is no visible evidence of mold in the Dwelling Unit, and so state on a new Residential Move-In Move-Out Inspection upon re-inspection.

   b.    Locks.    Landlord, at Tenant's request and at Tenant's sole cost and expense, will have all locks on the Dwelling Unit rekeyed.  Tenant may, at any time, ask Landlord to: (i) install one keyed deadbolt lock on all exterior doors, if the Dwelling Unit does not already have one installed on each door; (ii) install a sliding door pinlock and/or a security bar on each sliding glass door; (iii) install one door viewer on each exterior door; and (iv) change or rekey locks during the Term. Landlord will comply with any such request at Tenant's cost and expense, in accordance with the amounts shown in the Damage Addendum, with all such costs to be paid by Tenant as additional rent with the next monthly payment of Rent by Tenant after receipt by Tenant of an invoice from Landlord.

   c.    New Locks Pursuant to Court Order.    Any Tenant who has obtained an order (excluding ex parte orders) granting such Tenant possession of the Dwelling Unit to the exclusion of one or more other Tenants or authorized occupants in accordance with the provisions of Section 55-248.18:1 of the VRLTA may request Landlord to install new locks or other security devices on all exterior doors of the Dwelling Unit.  Tenant will reimburse Landlord's actual costs for such new locks or security devices.  All such costs will be paid by Tenant as additional rent with the next monthly payment of Rent by Tenant after receipt by Tenant of an invoice from Landlord

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

*Instanet Forms*

6. **USE, OCCUPANCY AND MAINTENANCE.**

   a.   <u>Use</u>.  Tenant covenants that the Dwelling Unit will be used only as a dwelling unit and in a manner that will not disturb neighboring tenants and that will not damage the Dwelling Unit or the Premises. Tenant will not permit any authorized occupants or guests or invitees in or about the Dwelling Unit or the Premises either to disturb neighboring tenants or to cause physical damage to the Dwelling Unit or the Premises. Tenant shall not deliberately or negligently destroy, deface, damage or impair any part of the Dwelling Unit or the Premises (including fixtures, facilities and appliances) or permit any person to do so with or without Tenant's knowledge, and Tenant shall be responsible for any damage caused by Tenant's failure to comply with this requirement. Tenant shall give Landlord prompt notice if any such damage occurs.

   b.   <u>Occupancy</u>.  No persons, other than those named as Tenant and as authorized occupants in section 1(g) of this Lease, may occupy the Dwelling Unit on a regular basis. For the purpose of this Lease, occupancy by an unauthorized person for more than seven (7) calendar days consecutively, or fourteen (14) calendar days in any calendar year, without prior written consent from Landlord, will constitute occupancy of the Dwelling Unit on a regular basis and will constitute a default under this Lease.  If at any time more than one person is named as a Tenant on this Lease, the obligations of each Tenant shall be joint and several.

   c.   <u>Assignment/Sublease</u>.  Tenant shall not assign this Lease or sublet any portion of the Dwelling Unit without the prior written consent of Landlord, which consent Landlord will be under no obligation whatsoever to grant.  Landlord shall have the right to consider any assignment or sublease made without Landlord's prior written consent void.

   d.   <u>Compliance with Codes; Fixtures</u>.  Tenant shall comply with all obligations imposed by applicable building and housing codes materially affecting health and safety, and shall keep the Dwelling Unit, including plumbing and other fixtures, appliances, and facilities in a good, clean, safe and sanitary condition. Tenant shall use in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other fixtures, appliances, and facilities in the Dwelling Unit and shall maintain the utility services paid for by Tenant on at all times during the Term. Tenant shall be responsible for any and all damages caused by Tenant's failure to comply with this requirement.

   e.   <u>Appliances</u>.  Tenant shall keep all appliances and equipment in good and clean condition, with the exception of reasonable wear and tear.  Tenant shall not install or use any other major appliances or equipment in the Dwelling Unit without prior written permission of Landlord.

   f.   <u>Smoke Detectors</u>.  Tenant shall be responsible for reasonable care and maintenance of smoke detectors in the Dwelling Unit in accordance with Section 55-248.16 Code of Virginia, and shall be responsible for interim testing and for providing written notice to Landlord of the need for repair of any malfunctioning smoke detector. Tenant shall not remove or tamper with any smoke detector, including removing any working batteries, so as to render the detector inoperative.  In accordance with Section 55-248.13 of the Code of Virginia, Landlord, at Landlord's expense, shall provide for the service, repair or replacement of smoke detectors in need thereof within five (5) days of receipt of written notice from Tenant that a smoke detector is in need of service, repair or replacement.

   g.   <u>Carbon Monoxide Detectors</u>.  Tenant shall have the right to request in writing that Landlord install a carbon monoxide detector in the Dwelling Unit, the cost of which may be charged to Tenant, in accordance with Section 55-248.18 of the VRLTA.  Tenant shall not remove or tamper with a properly functioning carbon monoxide detector, including removing any working batteries, so as to render the detector inoperative.

   h.   <u>Mold</u>.  Tenant will use reasonable efforts to maintain the Dwelling Unit in such a condition as to prevent accumulation of moisture and the growth of mold, and to notify Landlord in writing promptly of any moisture accumulation that occurs or of any visible evidence of mold discovered by Tenant.  Tenant does hereby release Landlord and Agent from any and all claims or liability to Tenant, Tenant's authorized occupants, or guests or invitees, and does hereby agree to indemnify and hold Landlord and Agent harmless from and against any and all loss, damage, claim, suit, costs (including reasonable attorneys fees and costs at all tribunal levels) or other liability whatsoever resulting from Tenant's failure to comply with the provisions of this subsection or any other provisions of law.

   i.   <u>Insects and Pests</u>.  Tenant shall keep the Dwelling Unit free from insects and pests, and  promptly notify the Landlord of the existence of any insects or pests.  Tenant shall prepare the Dwelling Unit for the application of insecticides or pesticides in accordance with any written instructions of Landlord, and if insects or pests are found to be present, follow any written instructions provided by Landlord to eliminate the insects or pests following the application of insecticides or pesticides.  Tenant who has concerns about specific insecticides or pesticides shall notify the Landlord in writing no less than 24 hours before any scheduled insecticide or pesticide application, in accordance with Section 17 of this Lease. Tenant does hereby release Landlord and Agent from any and all claims or liability to Tenant, Tenant's authorized occupants, or guests or invitees, and does hereby agree to indemnify and hold Landlord and Agent harmless, from and against any and all losses, damages, claims, suits, costs (including reasonable attorneys fees and costs) or other liabilities whatsoever arising from the presence of insects or pests in the Dwelling Unit, and/or resulting from Tenant's failure to comply with the provisions of this subsection or any other provisions of law.

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



j.  Painting and Alterations. Tenant shall not paint or disturb any painted surfaces or make other alterations to the Dwelling Unit without Landlord's prior written approval. Tenant shall notify Landlord and Agent in the event there is any chipped or peeling paint in the Dwelling Unit.

k.  Compliance with Law. Tenant shall comply with any and all obligations imposed upon Tenant by applicable Virginia law, including the VRLTA.

l.  Landlord Obligations. Landlord shall:

   i.  Upon written request of Tenant in accordance with Section 6(g) of this Lease, install a carbon monoxide alarm in the Dwelling Unit within ninety (90) days of such request. Landlord may charge the Tenant a reasonable fee to recover the costs of such installation. The Landlord's installation of a carbon monoxide alarm shall be in compliance with the Uniform Statewide Building Code. Landlord shall maintain a carbon monoxide alarm that Landlord has installed in the Dwelling Unit.

   ii.  Comply with the specific duties imposed upon landlords in Section 55-248.13 of the VRLTA. Landlord may only be liable to Tenant for damages proximately caused by Landlord's breach of said statute or a specific provision of this Lease Agreement.

## 7. UTILITIES.

a.  The utilities provided by Landlord and included in the Rent are listed in section 1(h)(i). Tenant shall obtain all utility and other services listed in section 1(h)(ii), or not otherwise listed in Section 1(h) as being provided by Landlord. All such utility and other services shall be paid directly by Tenant, and Tenant shall pay any deposits and monthly bills due to the applicable providers. Tenant shall pay in full all charges for utilities and other services which Landlord separately bills Tenant as set forth in section 1(h)(iii), and in accordance with the applicable invoice (if any). Tenant shall keep all essential utility services turned on, in and to the Dwelling Unit during any Lease term. Landlord shall not be liable for the failure to provide these services or for the interruption of such services if such failure or interruption is due to any cause beyond the control of Landlord.

b.  Landlord reserves the right to use sub-metering or energy allocation equipment, or to allocate utility costs on the basis of ratio utility billing ("RUBs"), as provided in the VRLTA, for the utilities provided by Landlord. If Landlord chooses to allocate utility costs on the basis of RUBs, Landlord will bill Tenant for an appropriate prorata share of such utility costs, which bill shall be due and payable as additional rent at the first of the next month.

## 8. PERSONAL PROPERTY OF TENANT

a.  Renter's Insurance. All personal property placed in or about the Dwelling Unit or the Premises shall be at the sole risk of Tenant or the parties owning the same, and Landlord shall not be liable for the loss, destruction, theft of, or damage to such property. Tenant shall obtain insurance coverage (commonly referred to as "renter's insurance"), which shall meet the minimum coverage Limits and other terms specified by Landlord. Landlord reserves the right to require Tenant to pay for the cost of renter's insurance obtained through Landlord, in which case the actual costs for such insurance and the administrative fee as set forth in Section 1(c) shall be charged to Tenant as additional rent. Tenant shall have the option to purchase their own renter's insurance policy, provided the policy otherwise meets the requirements of this Section 8(a), in which case Tenant shall be charged a monthly opt-out fee as set forth in Section 1(c). For any renter's insurance policy obtained by Tenant in accordance with this Section 8(a), Tenant agrees to maintain such policy in full force and effect for the full term of this Lease, including any extensions or renewals thereof, and to provide Landlord sufficient proof of such insurance. Any renter's insurance policy provided by Landlord shall terminate contemporaneously with the termination of this Lease.

b.  Abandoned Property. Any items of personal property left in or about the Dwelling Unit after Tenant vacates the Dwelling Unit will be considered abandoned property and may be disposed of by Landlord as Landlord sees fit, provided that Landlord has: (i) given Tenant written notice of termination as required by this Lease or the VRLTA including a notice that any items of personal property left in the Dwelling Unit or the Premises would be disposed of within twenty-four hours after termination; (ii) given written notice in accordance with subsection 9(d) of this Lease including notice that any items of personal property left in the Dwelling Unit or the Premises would be disposed of within twenty-four hours after expiration of the seven-day period; or (iii) given written notice to Tenant including a statement that any items of personal property left in the Dwelling Unit or the Premises would be disposed of within twenty-four hours after expiration of a ten-day period from the date of such notice. Tenant shall have the right to remove its personal property from the Dwelling Unit or the Premises at reasonable times during the twenty-four hour period after termination during normal business hours, or during normal business hours until Landlord has disposed of the remaining personal property of Tenant. During such twenty-four hour period and until Landlord disposes of the remaining personal property of Tenant, Landlord shall have no liability for risk of loss of such property.

c.  Death of Tenant. If a Tenant who is the sole occupant of the Dwelling Unit dies, and there is no person authorized by order of a circuit court to handle probate matters for the deceased Tenant, Landlord may

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

dispose of any personal property left by such Tenant upon giving at least ten (10) days written notice in accordance with Section 55-248.38:3 of the VRLTA. Such notice shall include a statement that any items of personal property left in the Dwelling Unit shall be treated as abandoned property and disposed of, if not claimed within ten (10) days, subject to subsection (b) hereof. This Lease shall be deemed terminated on the date of death of the Tenant; however, the estate of the Tenant shall remain liable for actual damages in accordance with Section 55-248.35 of the VRLTA, subject to Landlord's duty to mitigate damages.

9.    **ACCESS TO THE DWELLING UNIT AND PREMISES BY LANDLORD AND ITS DULY DESIGNATED REPRESENTATIVE(S); REPAIRS.**

   a.    Landlord and its duly designated representative(s) may enter the Dwelling Unit and go upon the Premises in order to do the following:

      i.    Upon reasonable notice to Tenant and at reasonable times:

         1.    inspect the Dwelling Unit and the Premises;

         2.    make necessary or agreed repairs, decorations, alterations, or improvements;

         3.    supply necessary or agreed services;

         4.    exhibit the Dwelling Unit and Premises to prospective or actual mortgagees, workmen, contractors, appraisers and/or representatives of any owners' association.

      ii.    Landlord will give Tenant at least twenty-four (24) hours notice, unless impractical to do so, of routine maintenance to be performed that has not been requested by Tenant, and shall not be required to provide prior notice to Tenant for any maintenance requested by Tenant. Landlord may enter the Dwelling Unit without Tenant's consent in cases of emergency. Tenant shall be responsible for paying the cost of any unnecessary service call and any costs incurred as a result of the Tenant failing to keep appointments with service persons that require access in order to make scheduled repairs.

      iii.    Place a "For Sale" sign upon the Dwelling Unit and Premises and exhibit the Dwelling Unit and Premises to prospective purchasers, or, after notice of termination of this Lease by Landlord or Tenant or commencing ninety (90) days before the expiration of the Term, place a "For Rent" sign upon the Dwelling Unit and Premises and exhibit the Dwelling Unit and Premises to prospective tenants. All such entries into the Dwelling Unit and Premises shall be conducted at reasonable times and with reasonable notice to Tenant and shall be done in such a way as not to unreasonably disturb Tenant.

   b.    Landlord shall give written notice to Tenant no less than 48 hours prior to an application of an insecticide or pesticide in the Dwelling Unit. If Tenant requests the application of the insecticide or pesticide, no prior notice is required.

   c.    If Tenant refuses to allow or prevents access to Landlord as provided herein, Landlord may obtain injunctive relief to compel access or may terminate this Lease. In either case, Landlord may recover actual damages sustained and reasonable attorney's fees.

   d.    Tenant shall give Landlord notice of any anticipated extended absence of Tenant from the Dwelling Unit in excess of seven (7) days. During such absence of Tenant, Landlord may enter the Dwelling Unit at times reasonably necessary to protect the Dwelling Unit. If Tenant fails to give such notice, Landlord may recover from Tenant any actual damages sustained, and shall have all other rights provided in the VRLTA. If Landlord cannot determine whether Tenant has abandoned the Dwelling Unit, Landlord may serve written notice on Tenant requiring Tenant to give Landlord written notice within seven days that Tenant intends to remain in occupancy of the Dwelling Unit. If by the end of such seven-day period Landlord has not received such notice or has otherwise determined that Tenant has abandoned the Dwelling Unit, the Dwelling Unit shall be presumed abandoned and this Lease shall be terminated as of such date.

In the event there is a non-emergency property condition, including a mold condition that requires Tenant to temporarily vacate the Dwelling Unit to make the necessary repairs, in the sole determination of Landlord, the Landlord may upon no less than thirty (30) days prior written notice to Tenant, require the Tenant to temporarily vacate the Dwelling Unit at no expense or cost to Tenant for a period of not more than thirty (30) days, to a comparable dwelling unit selected by Landlord, or at Landlord's option to a hotel room. Tenant shall continue to be responsible for all Rent due under the Lease without abatement, and shall comply with all other terms and conditions of the Lease during any period of temporary relocation. If the Landlord properly remedies the non-emergency property condition, or the mold condition in accordance with professional standards (as defined in Section 55-248.4 of the VRLTA), within the thirty (30) day period, the Tenant shall have no right to terminate the Lease as a result of such condition.

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Instanet
forms

10. **LANDLORD'S INABILITY TO DELIVER POSSESSION TO TENANT.** If Landlord is unable to deliver possession of the Dwelling Unit to Tenant on the Commencement Date of this Lease through no fault of Landlord, Landlord shall not be liable to Tenant for any damages other than to rebate any Rent paid by Tenant for such portion of the Term during which the Dwelling Unit is not delivered to Tenant. If Landlord cannot deliver possession of the Dwelling Unit or provide Tenant with an alternative residential dwelling unit acceptable to Tenant within fifteen (15) days after the Commencement Date of the Lease, the Lease may be terminated by either Landlord or Tenant by giving notice to the other as provided herein.

11. **CASUALTY DAMAGE.** If the Dwelling Unit is damaged by fire or other casualty, by the failure of or malfunction of any equipment or utilities serving the Dwelling Unit, Tenant shall promptly notify Landlord.  If, in the sole determination of Landlord, such damage does not render the Dwelling Unit substantially impaired or require repairs requiring Tenant to vacate the Dwelling Unit, Landlord shall repair the same within a reasonable period of time after service upon Landlord of written notice of such damage by Tenant, and Rent shall not abate during the period of such repairs. If the Dwelling Unit or any part thereof is damaged by fire or other casualty to such an extent that use of the Dwelling Unit is substantially impaired, or required repairs can be made only by Tenant vacating the Dwelling Unit, in the sole determination of Landlord, either Landlord or Tenant shall have the right to terminate the Lease in accordance with the terms of Section 55-248.24 of the VRLTA.  Landlord shall account to Tenant for the Security Deposit and prepaid rent, as applicable, plus accrued interest on the Security Deposit (if any) based upon the damage or casualty.  However, if Landlord reasonably believes that Tenant, Tenant's guests, invitees or authorized occupants were the cause of the damage or casualty, Landlord shall so notify Tenant and make disposition of the Security Deposit and prepaid rent by advising Tenant that such funds will be held until a determination is made of the amount of damages caused by Tenant's acts.  Landlord shall have the right to apply the Security Deposit and prepaid rent to the damage so caused by Tenant, Tenant's guests, invitees, or authorized occupants.  Except as otherwise provided herein, Tenant and Landlord do hereby otherwise release each other from any and all liability, loss, damage or claim resulting from any casualty and agree to secure from their insurers acknowledgment of such release and a waiver of any rights of subrogation.

12. **CONDEMNATION.** If all, or a substantial part, of the Dwelling Unit or Premises shall be acquired for any public use by the right of eminent domain, or private purchase in lieu of such right, by a public body vested with the power of eminent domain, this Lease and all rights of Tenant under it shall immediately terminate. The rent shall be adjusted as of the time of such acquisition, but Tenant shall have no claim against Landlord for any value of the unexpired Term, nor shall Tenant be entitled to any part of the condemnation award or purchase in lieu of such award.

13. **LIABILITY OF LANDLORD/AGENT.** Landlord and Managing Agent shall only be liable to Tenant(s) for damages proximately caused by Landlord's breach of Section 55-248.13 of the VRTLA or a specific provision of this Lease. Landlord and Managing Agent shall not be liable for negligence or tort. Landlord and Managing Agent shall also not have any liability of any kind whatsoever for any of the following: failure of utilities or services; acts of God; and any injuries or damages to persons or property either caused by or resulting from fire, falling plaster, dampness, overflow, or leakage upon or into the Dwelling Unit or the Premises of water, rain, snow, ice, sewage, steam, gas, or electricity, or by any breakage in or malfunction of pipes, plumbing, fixtures, air conditioners, or appliances, or leakage, breakage, or obstruction of soil pipes, nor for any injury or damage from any other cause. Tenant acknowledges that any security measures provided by Landlord or Agent will not be treated by Tenant as a further assurance or guarantee against crime or of a reduction in the risk of crime. Neither Landlord nor Agent will be liable to Tenant or any guest, invitee, or occupant for injury, damage or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Neither Landlord nor Agent will furnish security personnel, security lighting, security gates or fences, or other forms of security.  If the employees of Landlord or Agent are requested to render services not contemplated in this Lease, Tenant will hold Landlord and Agent harmless from any and all liability for same.  If information on Tenant's rental history is requested by others for law enforcement or business purposes, Landlord may provide same in accordance with the "Tenant Consent Form."  Landlord and Agent, in addition, shall not be liable under any circumstances of Tenant's failure to provide Landlord or Agent with prompt notice of any such conditions existing in the Dwelling Unit or Premises. Tenant hereby releases Landlord and Agent from any and all liability and agrees to indemnify Landlord and Agent for such losses, with respect to Tenant, and all authorized occupants and guests or invitees of Tenant.

14. **PETS.** No pets of any kind will be allowed to be kept or maintained on the Dwelling Unit without Landlord's prior written consent and the execution of an addendum entitled "Pet Addendum." Landlord reserves the right, however, to prohibit pets, except for qualified service animals, completely from the Dwelling Unit and Premises. Any unauthorized pet(s) in the Dwelling Unit shall constitute a breach of this Lease, and Tenant must pay the Unauthorized Pet Fee listed in section 1(c), if any, along with any other applicable Pet Rent, Fees and Deposit.

15. **REPRESENTATIONS IN APPLICATION FOR LEASE.** This Lease has been entered into in reliance on the

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the
Central Virginia Regional MLS.



information given by Tenant on Tenant's "Application for Lease", which by this reference is made a part of this Lease. Tenant shall advise Landlord or Agent in writing of any changes to the information contained in the application. If any of Tenant's material representations are found to be misleading, incorrect, untrue or omitted, Landlord may immediately terminate this Lease and require Tenant to vacate the Dwelling Unit.

16. **FINANCIAL RESPONSIBILITY.** If Landlord is required to make any payment to Tenant hereunder, Tenant agrees that such financial obligation will be satisfied solely from Landlord's estate and interest in the Dwelling Unit and the real estate upon which the Dwelling Unit is situated and the improvements of which it is part, or the proceeds thereof, so that Landlord will incur no individual or other liability for such financial obligations.

17. **NOTICE.** All notices shall be in accordance with Section 55-248.6 of the VRLTA, which provides for written notice to be given by regular mail or by hand delivery, with the party giving notice retaining a certificate of mailing, or delivery of the notice, as the case may be. Notice to the Landlord will be given to the Agent's Office or to such other place as may be specified by Landlord or Agent. Notice to Tenant will be given to the address of the Dwelling Unit. Landlord reserves the right for Landlord and Tenant to send notices in electronic form; however, if Tenant so requests, Tenant may elect to send and receive notices in paper form. If electronic delivery is used, the sender shall retain sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery. Landlord will send all electronic notices to the e-mail address provided by Tenant in the Rental Application, and Tenant is required to provide notice to Landlord of any change in e-mail address.

18. **MILITARY.**
   a.   Any Tenant who is a member of the armed forces of the United States or a member of the Virginia National Guard serving on fulltime duty or a Civil Service technician with a National Guard unit may, through the procedure detailed in subsection (b) of this section, terminate this Lease if the Tenant (i) has received permanent change of station orders to depart thirty-five miles or more (radius) from the location of the Premises; (ii) has received temporary duty orders in excess of three months' duration to depart thirty-five miles (radius) from the location of the Premises; (iii) is discharged or released from active duty with the armed forces of the United States or from full-time duty or technician status with the Virginia National Guard; or (iv) is ordered to report to government-supplied quarters resulting in the forfeiture of basic allowance for quarters.

   b.   If Tenant qualifies to terminate this Lease pursuant to subsection (a) of this section, and in accordance with Section 55-248.21:1 of the VRLTA, Tenant may do so by serving on Landlord a written notice of termination at least thirty (30) days prior to the next Rent due date. The termination date shall be no more than sixty (60) days prior to the date of departure necessary to comply with the official orders or any supplemental instructions for interim training or duty prior to the transfer. Prior to the termination date, Tenant shall furnish Landlord with a copy of the official notification of the orders or a signed letter, confirming the orders, from Tenant's commanding officer.

   c.   Nothing in this section shall limit the amount of the Security Deposit that Landlord may retain as provided in section 3 of this Lease.

   d.   Landlord reserves the right to require, as a condition of this Lease, that Tenant execute a waiver of all or part of the rights the Tenant may otherwise have under the Servicemembers Civil Relief Act.

   e.   If no waiver of rights under the Servicemembers Civil Relief Act is required by Landlord, in the event of a nonpayment of rent by Tenant, Landlord reserves the right to request an allotment from the pay of the servicemember tenant as permitted in the Servicemembers Civil Relief Act.

19. **CANCELLATION; RENEWAL.**
   a.   Either party may terminate this Lease in accordance with section 1(j) of this Lease. If notice of termination is not timely given, the Term of this Lease shall be extended upon the same terms and conditions as set forth in this Lease, for the term specified in section 1(j) until either party gives timely notice to terminate in accordance herewith, unless this Lease is terminated in accordance with any other applicable provision of this Lease or Virginia law; provided, however, that if the duration of the renewal term as set forth herein is less than the number of days specified in section 1(j) to terminate this Lease, then the notice period for terminating any renewal term of this Lease shall be the same period as the renewal term.

   b.   If Landlord intends to change the terms or conditions of this Lease, including increasing the Rent, for any renewal term thereafter, Landlord shall give Tenant written notice in accordance with section 1(j) of this Lease, advising Tenant of the new terms and conditions of a renewal lease. Should Tenant fail to provide Landlord timely written notice of Tenant's intentions to terminate the Lease in accordance with the preceding subsection (a), Tenant shall be deemed to have agreed to the terms and conditions set forth in Landlord's renewal notice, and shall be bound for such, until such time as the Lease is terminated in accordance with

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



this section.

c.    Any Tenant who is a victim of (i) family abuse as defined by § 16.1-228, (ii) sexual abuse as defined by § 18.2-67.10, or (iii) other criminal sexual assault under Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2 may terminate the Lease in accordance with the provisions of Section 55-248.21:2 of the VRLTA.

d.    Upon termination of this Lease, Tenant shall surrender the Dwelling Unit in good condition, with the exception of reasonable wear and tear and must pay for all damages or assessments for damages made by Landlord against Tenant in accordance with the Damage Addendum, other provisions of this Lease, or as Landlord reasonably determines.

**20. ACTION BY LANDLORD UPON DEFAULT BY TENANT.** Under Virginia law and this Lease, Landlord may terminate this tenancy during the term of the Lease upon one of the following:

a.    <u>Material Noncompliance by Tenant Failing to Pay Rent When Due</u>. If Tenant fails to pay Rent when due or pays Rent with a bad check, and such failure continues after Landlord has served a five-day notice of material noncompliance for failure to pay Rent, Tenant shall be in default, and Landlord may terminate this Lease and Tenant's right to possession in accordance with law and seek such damages as are appropriate under this Lease and the VRLTA.

b.    <u>Material Noncompliance by Tenant Which Can Be Remedied Within 21 Days</u>. If Tenant fails to comply materially with any other provision of this Lease, Landlord may serve on Tenant a material noncompliance notice stating that if Tenant does not remedy the specified noncompliance(s) within twenty-one (21) days after receipt of such notice, then if such noncompliance is remediable, this Lease will terminate thirty (30) days after Landlord has served such notice.

c.    <u>Repeat Violations</u>. If Tenant has been served with a prior written notice that required Tenant to remedy a breach, and Tenant remedied such breach, if Tenant intentionally has committed a subsequent breach of a like nature as the prior breach, Landlord may serve on Tenant a thirty (30) day termination notice for such repeat violation. Such notice must make reference to the prior breach of a like nature and state that the Lease will terminate in thirty (30) days for the reasons stated therein without allowing Tenant an opportunity to remedy such subsequent breach.

d.    <u>Nonremediable Violations/Criminal Acts</u>. If Tenant commits a material noncompliance that is not remediable, Landlord may serve on Tenant a termination notice stating that this Lease will terminate in thirty (30) days for the reasons stated therein without allowing Tenant an opportunity to remedy such breach. If a breach of Tenant obligations under Virginia law or this Lease involves or constitutes a criminal or willful act that is not remediable and that poses a threat to health or safety, Landlord may terminate this Lease immediately by giving of written notice thereof. Tenant and any other persons in or about the Dwelling Unit with consent of Tenant, including but not limited to members of the family, guests, invitees or authorized occupants, shall not engage in criminal activities or activities intended to facilitate criminal activities including any illegal drug-related activity on the Dwelling Unit and any area of the Premises, including common areas and streets, involving a controlled substance (as defined in Section 54.1-3401 of the Virginia Code). "Illegal drug-related activity" means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute or use of a controlled substance. Neither Tenant, guests, invitees or authorized occupants of Tenant will engage in the manufacture, sale or distribution of illegal drugs at any location, whether on the Premises or otherwise. Neither Tenant, guests or invitees or authorized occupants of Tenant will engage in acts of violence or threats of violence, including, but not limited to the unlawful discharge of firearms in the Dwelling Unit or on or near the Premises. A single violation of any of these provisions shall constitute a non-remediable violation of the Lease and justification for termination thereof. Criminal conviction is not required in order for Landlord to terminate this Lease. Nothing herein shall be construed to limit any remedies available under Virginia law for any criminal offenses committed by Tenant, guests, invitees or authorized occupants of Tenant.

e.    <u>Material Noncompliance by Tenant Which Can Be Remedied by Repairs, Cleaning or Replacement</u>. If Tenant commits a material noncompliance that can be remedied by repair, cleaning or replacement, Landlord shall deliver written notice to Tenant specifying the breach and stating that Landlord will enter the Dwelling Unit and perform the work. Once the work is complete, Landlord will deliver an itemized bill to Tenant for the work, and such amounts are due as rent on the next rent due date, or if this Lease is terminated, immediate payment is due.

f.    <u>Remedies Available to Landlord Upon Termination of Lease</u>. In the event of a breach of the Lease or noncompliance by Tenant, Landlord shall be entitled to recover from Tenant the following, regardless of whether or not a lawsuit is filed or an order obtained from a court, amounts as contracted for in the Lease including: (i) rent due and owing (as of the court date if a lawsuit is pending), (ii) other charges and fees, (iii) late charges, (iv) reasonable attorney's fees in accordance with Section 26 of this Lease, unless in a court action the Tenant proved by a preponderance of the evidence that Tenant's failure to pay rent or vacate was reasonable, (v) costs of the proceeding as provided by law if a court action has been filed, and (vi) damages

This form was produced by Mr. Boyd Smith, CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



to the Dwelling Unit or premises.

g.     Family abuse.  If a Tenant is a victim of family abuse as defined in the VRLTA, and the perpetrator is barred from the Dwelling Unit pursuant to Section 55-248.31:01 of the VRLTA based upon information provided by Tenant to Landlord, or by a protective order issued by a court of competent jurisdiction, Landlord may not terminate this Lease due solely by an act of family abuse against a Tenant. However, the provisions of the preceding sentence shall not apply if: (i) Tenant fails to provide Landlord, not later than twenty-one (21) days after the alleged offense, with written documentation corroborating Tenant's status as a victim of family abuse and the exclusion of the perpetrator from the Dwelling Unit and the Premises; or (ii) the perpetrator returns to the Dwelling Unit in violation of the bar notice, and Tenant fails to so notify Landlord with 24 hours, subject to the provisions of the VRLTA.

21. **ACCEPTANCE OF RENT WITH RESERVATION.**  If Tenant is in default under this Lease, Landlord may accept rent with reservation upon providing Tenant written notice of such acceptance in a termination notice, or within five (5) business days of receipt of rent, and such acceptance of periodic rental payments with knowledge of a material non-compliance by the Tenant will not constitute a waiver of Landlord's right to terminate the Lease. If Landlord has given Tenant written notice that the periodic rental payments have been accepted with reservation, Landlord may accept full payment of all rental payments, damages and other fees and still be entitled to receive an order of possession terminating the Lease as provided in Section 55-248.34:1 of the VRLTA. Any rental payment received after judgment and possession has been granted to Landlord against Tenant, but prior to eviction, will be accepted with reservation and will be applied to the judgment amount, including the late charges, applicable costs and attorney's fees, but will not affect the pending eviction pursuant to the order of possession granted by a court of competent jurisdiction, in accordance with the requirements of Section 55-248.34:1 of the VRLTA. Further, the acceptance of the said amount with reservation in no way creates a new landlord/tenant relationship with Tenant.

22. **NO WAIVER.**  If Landlord waives a noncompliance or breach of the Lease or law by Tenant, such waiver shall not be construed as a waiver of any subsequent breach of noncompliance or breach, and this Lease shall continue in full force and effect.

23. **SUBORDINATION.**  Tenant agrees that this Lease is subordinate to the lien of any existing or future deeds of trust or mortgages placed on the Dwelling Unit and Premises, and Tenant agrees to execute whatever additional agreements may be required to so subordinate this Lease. Landlord reserves the right to assign any of Landlord's rights under this Lease at any time.

24. **SEVERABILITY.**  If any provisions of this Lease are violative of law or equity, the remaining provisions shall remain in full force and effect.

25. **DISCRIMINATION.**  Landlord and Agent shall not discriminate against Tenant in the provisions of services or in any other manner on the basis of race, color, creed, religion, sex, national origin, familial status, elderliness, or handicap.

26. **REASONABLE ATTORNEY'S FEES/COSTS OF COLLECTION.**  If as a result of Tenant's noncompliance with, or a breach of this Lease or the law Landlord employs an attorney at law, regardless of whether a lawsuit is filed, Tenant agrees to pay Landlord's reasonable attorney's fees and costs in all courts of competent jurisdiction at all tribunal levels, as well as any and all costs recoverable under Virginia law.

27. **RULES AND REGULATIONS.**  Tenant shall abide by any rules and regulations adopted by Landlord applicable to the Dwelling Unit and the Premises, including any and all updated, and any rules of any property or homeowner, or similar association in which the Dwelling Unit is located.

28. **HOLDOVER TENANT.**  If Tenant remains in possession of the Dwelling Unit after the required departure date following the termination of this Lease, Tenant shall be liable for the following damages sustained by Landlord, or Agent:  (i) its actual damages which include but not are limited to, holdover rent equal to the Per Diem Rent set forth in section 1(c) multiplied by the number of days Tenant stays in possession of the Dwelling Unit after the vacating date, and storage, hotel, meals, mileage, etc., payable to the new tenant; (ii) liquidated damages equal to one-hundred and fifty percent (150%) (or one-hundred percent (100%) for any HUD property) of the Per Diem Rent, multiplied by the number of days Tenant stays in possession of the Dwelling Unit after the vacating date; and (iii) reasonable attorney's fees and court costs.  In addition, if Tenant remains in the Dwelling Unit after termination or expiration of the Lease and no new Lease is entered into, the terms of the Lease shall remain in effect, except that the amount of rent shall be either as provided in the terminated Lease, or as provided by Landlord in a written notice to Tenant.  Such new rent amount shall take effect on the next rent due date following thirty (30) days after the notice. Nothing herein shall be deemed to create a right on the part of Tenant to holdover after the required departure date.

**VAR FORM 200   REV. 07/14**                   *PAGE 11 OF 14*

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



29. **MODIFICATION, APPLICABLE LAW AND SUCCESSORS.** This Lease and any and all addenda, exhibits or amendments hereto constitutes the entire agreement among the parties, and it may not be modified or amended except by written instrument executed by Landlord and Tenant. This Lease shall be construed, interpreted and applied according to Virginia law and it shall be binding upon and inure to the benefit of the heirs, personal representatives, successors, assignees, and subtenants of the parties.

30. **STATUTORY NOTICE TO TENANT.** Tenant shall exercise whatever due diligence Tenant deems necessary with respect to information concerning sex offenders registered under Chapter 23 (sec 19.2-387 et seq.) of Title 19. Such information may be obtained by contacting the local police department or the Department of State Police, Central Records exchange at (804) 674-2000 or www.vsp.va.state.us.

31. **BANKRUPTCY.** Subject to the requirements of the Bankruptcy Code, in the event the Tenant is adjudicated as bankrupt, (or makes an assignment for the benefit of creditors), this Lease, at the option of the Landlord, shall terminate upon thirty (30) days written notice and the Dwelling Unit shall be surrendered to the Landlord, who reserves the right to repossess the Dwelling Unit subject to the applicable provisions of law.

32. **OTHER SPECIFIC PROVISIONS:**
Tenant can pay rent by check, M/O, Cashier's check, or bill pay
through there written out to the owners, Lavaniel & Afrikka
Ennis and either mailed or dropped off at RVA Rental Properties,
1231 Alverser Drive, Midlothian, VA 23113. Rent is due on the
1st and considered late if not at RVA Rental Properties by the
5th of the month. Tenant to call the property manager at 869-
9311 or email at rentals@rvahomes.com with any issues pertaining
to the home. Tenant is to abide by the rules and regulations of
the home owners association, if the owner's are fined because
the tenants did not abide by the HOA rules and regulations the
tenants will be responsible for paying the fine.

There is a home warranty on the home, home owner will pay 1st
three trade fees then tenant will pay after that.

33. **OPTIONAL PROVISIONS (to be initialed by Tenant if checked):**

☐    **LEAD-BASED PAINT.** The Premises were constructed prior to 1978, and housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not maintained properly. Lead exposure is especially harmful to young children and pregnant women. The Lead Based Paint Disclosure and EPA information book "Protect Your Family from Lead in Your Home" are attached hereto and made a part hereof, which shall be acknowledged by Tenant prior to occupancy of the Dwelling Unit.
Tenant _____    Tenant _____    Tenant _____    Tenant _____

☐    **DEFECTIVE DRYWALL.** Tenant recognizes and acknowledges that prior to execution of this Lease, Tenant has received a written disclosure that the Dwelling Unit contains "defective drywall," as defined in Section 36-156.1 of the Code of Virginia.
Tenant _____    Tenant _____    Tenant _____    Tenant _____

☐    **ASBESTOS.** Landlord hereby discloses any information known by Landlord regarding the location and condition of asbestos actually known to exist in the Dwelling Unit.

_____    _____

_____    _____

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



Tenant may not disturb in any manner any areas noted above.

Tenant _____     Tenant _____     Tenant _____     Tenant _____

☐    **TRANSFER OF TENANT.** In addition to the rights set forth in section 18, any Tenant has the right to terminate this Lease if transferred fifty (50) miles or more (radius) from the Premises by the employer stated on the Rental Application. The termination shall be effective on the last day of the second calendar month following the month in which the Landlord receives the notice of termination. The Tenant shall provide a copy of the Tenant's transfer letter and/or orders, the final month's rent and the following termination or cancellation fee: (1) one month's rent if the Tenant has completed fewer than six (6) months of the tenancy as of the effective date of termination; or (2) one-half (½) of one month's rent if the Tenant has completed six (6) months or more of the tenancy as of the effective date of termination.

Tenant _____     Tenant _____     Tenant _____     Tenant _____

☐    **DIPLOMATS.** This Lease is void if the Tenant is the head of a diplomatic mission or a member of the diplomatic staff of a mission, or a family member of a diplomatic staff of a mission, or administrative and technical staff or their family which entitled them to the diplomatic immunity accorded to such persons under the Vienna Convention on Diplomatic Relations **unless** the diplomatic immunity accorded by law has been waived in writing by an authorized representative of the sending government. Tenant represents to the Landlord that he/she is such a person.

Tenant _____     Tenant _____     Tenant _____     Tenant _____

34.    **AGENCY RELATIONSHIP.** Landlord hereby ☒ does OR ☐ does not appoint Agent as its managing agent, with full and complete authority to engage in all aspects of the business of the management of the Dwelling Unit, and to act for Landlord in all respects which relate to this Lease. In consideration of Agent's procuring Tenant as a tenant in the Dwelling Unit and the negotiation of this Lease, Landlord agrees to pay Agent a procuring fee of **$99.00** _____, which fee shall be separate from any management fee paid to Agent. This fee is earned when this Lease is executed, and is payable on all Rent during the original term, any renewals, extensions, expansions, replacements, relocations, or new leasings between Landlord and Tenant or its successors and assigns. No sale of the Dwelling Unit or the Premises shall release Landlord or its successor or assigns from the obligations set forth herein. Agent shall have the right to collect all Rent due hereunder so that its fees and commissions may be paid in installments as the Rent is received and retained by Agent before remitting the Rent (less such fees or commissions) to Landlord; but if any act be done to deprive Agent of its right to collect the Rent, then the entire amount of its fees and commissions earned but then unpaid shall, at Agent's option, become immediately due and payable. In addition to this fee or any other fee payable to Agent hereunder, Landlord agrees to pay Agent a sales fee equal to _n/a_____ if the Dwelling Unit or the Premises is sold during the Term of this Lease or any renewals or extensions thereof or within one-hundred twenty (120) days after the termination of this Lease to Tenant or to any entity affiliated with, controlled by or under joint ownership or control with Tenant or any of its owners or principals. This provision does not grant Tenant any right to purchase the Dwelling Unit or the Premises, nor does it authorize Agent to offer such property for sale. In the event Agent receives a mortgage default, foreclosure or similar notice from any lender affecting the Dwelling Unit or Premises, Agent shall deliver such notice to Tenant, unless such notice was delivered by Tenant to Agent.

35.    **WAIVER OF HOMESTEAD EXEMPTION.** Tenant expressly waives the benefit of the homestead exemption laws of the Commonwealth of Virginia.

36.    **ELECTRONIC SIGNATURES.**
_____ / _____ **If this Section is initialed by both parties, then in accordance with the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, or E-Sign, regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic signatures as an additional method of signing and/or initialing this Lease Agreement. The parties hereby agree that either party may sign electronically by utilizing an electronic signature service.**

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



IN WITNESS WHEREOF, the parties have executed this Lease:

**LANDLORD (or duly authorized agent)**

Name LaVaniel Ennis, Jr.    Date 7/29/14

Name Afrikka Ennis    Date 7/29/14

**TENANT(S)**

Name Kavleena Webb    Date 7/29/14

Name _____    Date _____

Name _____    Date _____

Name _____    Date _____

**LANDLORD'S BROKER**

Name RVA Rental Properties, LLC    Date 7/29/14

**TENANT'S AGENT**

Name _____    Date _____

COPYRIGHT©2014 by the Virginia Association of REALTORS®. All rights reserved. This form may be used only by members in good standing of the Virginia Association of REALTORS®. The reproduction of this form, in whole or in part, or in the use of the name "Virginia Association of REALTORS®", in connection with any other form, is prohibited without prior written consent of the Virginia Association of REALTORS®.

VAR FORM 200   REV. 07/14        PAGE 14 OF 14

This form was produced by Mr. Boyd Smith. CVR MLS forms may be used only by members in good standing of the
Central Virginia Regional MLS.

Instanet forms



Lease Extension Agreement

This lease extension agreement  created on  May 19, 2016 Between LaVaniel & Afrikka Ennis(hereinafter the LESSOR), and  Kevleena Webb (hereinafter the LESSEE), for the property Located at 7118 West Road, Chesterfield, VA  23832.

The agreement certifies that the parties agree to extend the lease agreement for an additional time period of one year starting  August 1, 2016.

This lease will be extended at a rate of $448 a month beginning  August  1, 2016 with the lease ending July 31 , 2017.

This document binds the Lessor and the Lessee to the terms and conditions of the original lease. This lease extension agreement, along with the attached original lease, is the entire agreement between both parties.

Lessor

Signature: _____     Date _5/19/2016_
Afrikka Ennis

Signature: _____     Date 5/19/2016
LaVaniel Ennis


Lessee

Signature: _____     Date: 5/19/2016
Kevleena Webb



### Lease Extension Agreement

This lease extension agreement created on May 21, 2015 Between LaVaniel & Afrikka Ennis(hereinafter the LESSOR), and Kavleena Webb (hereinafter the LESSEE), for the property Located at 7118 West Road, Chesterfield, VA 23832.

The agreement certifies that the parties agree to extend the lease agreement for an additional time period of one year starting July 31, 2015.

This lease will be extended at a rate of $421 a month beginning August 1, 2015 with the lease ending July 31 , 2016.

This document binds the Lessor and the Lessee to the terms and conditions of the original lease. This lease extension agreement, along with the attached original lease, is the entire agreement between both parties.

Lessor

Signature: _____  Date 5/25/2015
Afrikka Ennis

Signature: _____  Date 5/25/2015
LaVaniel Ennis


Lessee

Signature: _____  Date: 7-7-2015
Kavleena Webb

RVA Rental Properties, LLC

*\* Late Payments in 10mo*

**Period: 01 Jan 2018-31 Dec 2018**

1231 Alverser Drive
Midlothian, VA 23113

**Owner Statement**



Afrikka & LaVaniel Ennis
8218 Tatterton Trl
Chesterfield, VA 23237



Properties
**7118 West Road** - 7118
West Road
Chesterfield, VA 23832

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|---|---|---|---|---|---|---|---|
| | | | | Beginning Cash Balance as of 01/01/2018 | | | 25.80 |
| 01/01/2018 | Kevleena Webb | Receipt | | Rent Income | 52.20 | | 78.00 |
| 01/05/2018 | Kevleena Webb | Receipt | 7362 | Rent Income - January 2018 | 368.80 | | 446.80 |
| 01/05/2018 | Kevleena Webb | Receipt | 7362 | Rent Income | 9.10 | | 455.90 |
| 01/05/2018 | Kevleena Webb | Receipt | 7362 | ✱ Late Rent Fee - Late Fee for Feb 2018 | 42.10 | | 498.00 |
| 01/10/2018 | Afrikka & LaVaniel Ennis | eCheck | 39CE-ADDA | Owner Distribution - Owner payment for 01/2018 | | 321.00 | 177.00 |
| 02/05/2018 | RVA Rental Properties, LLC | Check | 1607 | Management fees - Management fees for 01/2018 | | 100.00 | 77.00 |
| 02/12/2018 | Kevleena Webb | Receipt | 666821741 | Rent Income - February 2018 | 411.00 | | 488.00 |
| 02/12/2018 | Afrikka & LaVaniel Ennis | eCheck | 50C8-0E1E | Owner Distribution - Owner payment for 02/2018 | | 388.00 | 100.00 |
| 03/03/2018 | RVA Rental Properties, LLC | Check | 1825 | Management fees - Management fees for 02/2018 | | 100.00 | 0.00 |
| 03/05/2018 | Kevleena Webb | Receipt | 9435 | Rent Income - February 2018 | 0.90 | | 0.90 |
| 03/05/2018 | Kevleena Webb | Receipt | 9435 | Rent Income - March 2018 | 419.10 | | 420.00 |
| 03/07/2018 | Afrikka & LaVaniel Ennis | eCheck | 2143-9A08 | Owner Distribution - Owner payment for 03/2018 | | 320.00 | 100.00 |
| 04/06/2018 | Kevleena Webb | Receipt | 8725 | Rent Income - April 2018 | 420.00 | | 520.00 |
| 04/06/2018 | Afrikka & LaVaniel Ennis | eCheck | 86A5-D37A | Owner Distribution - Owner payment for 04/2018 | | 320.00 | 200.00 |
| 05/02/2018 | RVA Rental Properties, LLC | Check | 1686 | Management fees - Management fees for 03/2018 | | 100.00 | 100.00 |

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|------|---------------|------|-----------|-------------|--------|---------|---------|
| 05/02/2018 | RVA Rental Properties, LLC | Check | 1686 | Management fees - Management fees for 04/2018 | | 100.00 | 0.00 |
| 05/07/2018 | Kevleena Webb | Receipt | 1348 | Rent Income - May 2018 | 420.00 | | 420.00 |
| 05/07/2018 | Afrikka & LaVaniel Ennis | eCheck | 7908-773E | Owner Distribution - Owner payment for 05/2018 | | 320.00 | 100.00 |
| 05/14/2018 | Bill Anderson | Check | 1712 | General Maintenance Labor - replace 2 stair treadson front porch, reattached handrail for inside staircase, repaired wall and painted. | | 250.00 | -150.00 |
| 06/19/2018 | Kevleena Webb | Receipt | 71442 | Rent Income - March 2018 | 1.90 | | -148.10 |
| 06/19/2018 | Kevleena Webb | Receipt | 71442 | Rent Income - April 2018 | 1.00 | | -147.10 |
| 06/19/2018 | Kevleena Webb | Receipt | 71442 | Rent Income - May 2018 | 1.00 | | -146.10 |
| 06/19/2018 | Kevleena Webb | Receipt | 71442 | Rent Income - June 2018 | 286.10 | | 140.00 |
| 06/19/2018 | Kevleena Webb | Receipt | 17263 | Rent Income - June 2018 | 134.90 | | 274.90 |
| 06/19/2018 | Kevleena Webb | Receipt | 17263 | Late Rent Fee - Late Fee for Jun 2018 | 15.10 ? | | 290.00 |
| 06/19/2018 | Afrikka & LaVaniel Ennis | eCheck | 3506-BC66 | Owner Distribution - Owner payment for 06/2018 | | 190.00 | 100.00 |
| 07/09/2018 | Kevleena Webb | Receipt | 501550572 | Late Rent Fee - Late Fee for Jun 2018  42.10 | 27.00 | | 127.00 |
| 07/09/2018 | Kevleena Webb | Receipt | 501550572 | Rent Income - July 2018 | 273.00 | | 400.00 |
| 07/09/2018 | Afrikka & LaVaniel Ennis | eCheck | D8FA-68DA | Owner Distribution - Owner payment for 07/2018 | | 200.00 | 200.00 |
| 08/05/2018 | Kevleena Webb | Receipt | 4163 | Rent Income - August 2018 | 234.00 | | 434.00 |
| 08/05/2018 | Kevleena Webb | Receipt | 1298 | Rent Income - July 2018 | 148.00 | | 582.00 |
| 08/05/2018 | Kevleena Webb | Receipt | 1298 | Rent Income - August 2018 | 52.00 | | 634.00 |
| 08/06/2018 | Afrikka & LaVaniel Ennis | eCheck | 7282-15E6 | Owner Distribution - Owner payment for 08/2018 | | 334.00 | 300.00 |
| 08/13/2018 | Kevleena Webb | Receipt | 0703 | Late Rent Fee - Late Fee for Jul 2018 | 42.10 | | 342.10 |
| 08/13/2018 | Kevleena Webb | Receipt | 0703 | Rent Income - August 2018 | 97.90 | | 440.00 |
| 08/27/2018 | Afrikka & LaVaniel Ennis | eCheck | 5559-1A1A | Owner Distribution - Owner payment for 08/2018 | | 140.00 | 300.00 |
| 09/06/2018 | Kevleena Webb | CC receipt | DAZK-Q3LE | Rent Income - August 2018 | 37.10 | | 337.10 |
| 09/06/2018 | Kevleena Webb | CC receipt | DAZK-Q3LE | Late Rent Fee | 42.10 | | 379.20 |
| 09/08/2018 | Kevleena Webb | CC receipt | DAZK-Q3LE | Rent Income - September 2018 | 63.10 | | 442.30 |
| 09/08/2018 | Kevleena Webb | CC receipt | EIG9-5VHE | Rent Income - September 2018 | 400.00 | | 842.30 |
| 09/10/2018 | Afrikka & LaVaniel Ennis | eCheck | 3EA0-C58C | Owner Distribution - Owner payment for 09/2018 | | 442.30 | 400.00 |

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|------|---------------|------|-----------|-------------|--------|---------|---------|
| 09/12/2018 | Kevleena Webb | Receipt | 0796 | Rent Income - September 2018 | 226.00 | | 626.00 |
| 09/20/2018 | Afrikka & LaVaniel Ennis | eCheck | 2A8B-E0E0 | Owner Distribution - Owner payment for 09/2018 | | 226.00 | 400.00 |
| 10/08/2018 | Kevleena Webb | Receipt | 0352 | Rent Income - September 2018 | 79.20 | | 479.20 |
| 10/08/2018 | Kevleena Webb | Receipt | 0352 | Rent Income - October 2018 | 420.80 | | 900.00 |
| 10/08/2018 | Kevleena Webb | Receipt | 0353 | Rent Income - October 2018 | 220.00 | | 1,120.00 |
| 10/10/2018 | Afrikka & LaVaniel Ennis | eCheck | 3C14-F17A | Owner Distribution - Owner payment for 10/2018 | | 648.00 | 472.00 |
| 10/15/2018 | Kevleena Webb | Receipt | | Rent Income - September 2018 | 0.70 | | 472.70 |
| 10/15/2018 | Kevleena Webb | Receipt | | Rent Income - October 2018 | 49.00 | | 521.70 |
| 10/15/2018 | Kevleena Webb | Receipt | | Late Rent Fee - Late Fee for Oct 2018 | 0.30 | | 522.00 |
| 11/24/2018 | Afrikka & LaVaniel Ennis | eCheck | 3240-272C | Owner Distribution - Owner payment for 11/2018 | | 1,550.00 | -1,028.00 |
| 12/20/2018 | RVA Rental Properties, LLC | Receipt | | Security Deposits Clearing - Kevleena Webb, 7118 West Road: Security Deposit Transfer | 1,650.00 | | 622.00 |
| | | | | Ending Cash Balance | | | 622.00 |
| **Total** | | | | | **6,645.50** | **6,049.30** | |

## Property Cash Summary

RVA Rental Properties, LLC

1231 Alverser Drive
Midlothian, VA 23113

 7X 100% 2017

**Period:** 01 Jan 2017-08 Apr 2017

 **Owner Statement**

 Afrikka & LaVaniel Ennis
8218 Tatterton Trl
Chesterfield, VA 23237

**Properties**

**7118 West Road** - 7118
West Road
Chesterfield, VA 23832

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|---|---|---|---|---|---|---|---|
| | | | | Beginning Cash Balance as of 01/01/2017 | | | -8.20 |
| 01/09/2017 | Kevleena Webb | Receipt | R107564379670 | Rent Income - November 2016 | 0.60 | | -7.60 |
| 01/09/2017 | Kevleena Webb | Receipt | R107564379670 | Rent Income - Rent for November due | 1.40 | | -6.20 |
| 01/09/2017 | Kevleena Webb | Receipt | R107564379670 | Rent Income - January 2017 | 498.00 | | 491.80 |
| 01/09/2017 | Afrikka & LaVaniel Ennis | eCheck | 7F76-7F8D | Owner Distribution - Owner payment for 01/2017 | | 391.80 | 100.00 |
| 01/09/2017 | RVA Rental Properties, LLC | Check | 1095 | Management fees - Management fees for 01/2017 | | 100.00 | 0.00 |
| 02/10/2017 | Kevleena Webb | Receipt | 10756438208 | Rent Income - Rent for November due | 48.60 | | 48.60 |
| 02/10/2017 | Kevleena Webb | Receipt | 10756438208 | Late Rent Fee - Late Fee for Jan 2017 | 49.80 | | 98.40 |
| 02/10/2017 | Kevleena Webb | Receipt | 10756438208 | Rent Income - February 2017 | 126.60 | | 225.00 |
| 02/10/2017 | Afrikka & LaVaniel Ennis | eCheck | C004-D564 | Owner Distribution - Owner payment for 02/2017 | | 125.00 | 100.00 |
| 02/14/2017 | Kevleena Webb | Receipt | R107564382310 | Rent Income - February 2017 | 300.00 | | 400.00 |
| 02/14/2017 | Afrikka & LaVaniel Ennis | eCheck | 8B93-129E | Owner Distribution - Owner payment for 02/2017 | | 300.00 | 100.00 |
| 02/15/2017 | RVA Rental Properties, LLC | Check | 1121 | Management fees - Management fees for 02/2017 | | 100.00 | 0.00 |
| 02/22/2017 | Kevleena Webb | Receipt | 1549190223 | Rent Income - February 2017 | 71.40 | | 71.40 |
| 02/22/2017 | Kevleena Webb | Receipt | 1549190223 | Late Rent Fee - Late Fee for Feb 2017 | 49.80 | | 121.20 |
| 02/22/2017 | Kevleena Webb | Receipt | 1549190223 | Prepaid Rent - Prepaid Rent Income | 18.80 | | 140.00 |
| 03/06/2017 | Kevleena Webb | Receipt | R107564384170 | Rent Income - March 2017 | 450.00 | | 590.00 |
| 03/06/2017 | RVA Rental Properties, LLC | Check | 1132 | Management fees - Management fees for 03/2017 | | 100.00 | 490.00 |
| 03/06/2017 | Afrikka & LaVaniel Ennis | eCheck | FC25-DB6E | Owner Distribution - Owner payment for 03/2017 | | 490.00 | 0.00 |
| 04/05/2017 | Kevleena Webb | Receipt | | Rent Income - March 2017 | 29.20 | | 29.20 |
| 04/05/2017 | Kevleena Webb | Receipt | | Rent Income - April 2017 | 453.80 | | 483.00 |
| 04/06/2017 | RVA Rental Properties, LLC | Check | 1162 | Management fees - Management fees for 04/2017 | | 100.00 | 383.00 |
| 04/06/2017 | Afrikka & LaVaniel Ennis | eCheck | 5664-7A46 | Owner Distribution - Owner payment for 04/2017 | | 383.00 | 0.00 |

RVA Rental Properties, LLC

**Period:** 01 May 2017-31 Dec 2017

1231 Alverser Drive
Midlothian, VA 23113

 Owner Statement

 Afrikka & LaVaniel Ennis
8218 Tatterton Trl
Chesterfield, VA 23237

Properties
**7118 West Road - 7118**
West Road
Chesterfield, VA 23832

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|---|---|---|---|---|---|---|---|
| | | | | Beginning Cash Balance as of 05/01/2017 | | | 0.00 |
| 05/08/2017 | Kevleena Webb | Receipt | 3098 money order | Rent Income - April 2017 | 44.20 | | 44.20 |
| 05/08/2017 | Kevleena Webb | Receipt | 3098 money order | Late Rent Fee - Late Fee for Apr 2017 | 49.80 | | 94.00 |
| 05/08/2017 | Kevleena Webb | Receipt | 3098 money order | Rent Income - May 2017 | 354.00 | | 448.00 |
| 05/08/2017 | RVA Rental Properties. LLC | Check | 1203 | Management fees - Management fees for 05/2017 | | 100.00 | 348.00 |
| 05/08/2017 | Afrikka & LaVaniel Ennis | eCheck | 4929-F5F8 | Owner Distribution - Owner payment for 05/2017 | | 348.00 | 0.00 |
| 06/20/2017 | Kevleena Webb | Receipt | 5268 | Rent Income - May 2017 | 144.00 | | 144.00 |
| 06/20/2017 | Kevleena Webb | Receipt | 5268 | Rent Income - June 2017 | 181.00 | | 325.00 |
| 06/22/2017 | Afrikka & LaVaniel Ennis | eCheck | 3B12-E6EE | Owner Distribution - Owner payment for 06/2017 | | 325.00 | 0.00 |
| 07/05/2017 | Kevleena Webb | Receipt | | Rent Income - June 2017 | 250.00 | | 250.00 |
| 07/12/2017 | Afrikka & LaVaniel Ennis | eCheck | 3889-AB3A | Owner Distribution - Owner payment for 07/2017 | | 150.00 | 100.00 |
| 07/17/2017 | Kevleena Webb | Receipt | 4440 | Rent Income - June 2017 | 67.00 | | 167.00 |
| 07/17/2017 | Kevleena Webb | Receipt | 4440 | Late Rent Fee - Late Fee for Jun 2017 | 49.80 | | 216.80 |
| 07/17/2017 | Kevleena Webb | Receipt | 4440 | Rent Income - July 2017 | 83.20 | | 300.00 |
| 07/28/2017 | Kevleena Webb | Receipt | 4476 | Rent Income - July 2017 | 50.20 | | 350.20 |
| 07/28/2017 | Kevleena Webb | Receipt | 4476 | Late Rent Fee - Late Fee for Jul 2017 | 49.80 | | 400.00 |
| 07/31/2017 | Afrikka & LaVaniel Ennis | eCheck | B2AA-A53E | Owner Distribution - Owner payment for 07/2017 | | 200.00 | 200.00 |
| 08/07/2017 | Kevleena Webb | Receipt | 4582 | Rent Income - July 2017 | 364.60 | | 564.60 |
| 08/07/2017 | Kevleena Webb | Receipt | 4582 | Home Warranty - hvac system needed repairs | 100.00 | | 664.60 |
| 08/07/2017 | Kevleena Webb | Receipt | 4582 | Rent Income - August 2017 | 35.40 | | 700.00 |
| 08/07/2017 | Afrikka & LaVaniel Ennis | eCheck | FB18-E5F2 | Owner Distribution - Owner payment for 08/2017 | | 600.00 | 100.00 |
| 08/15/2017 | Kevleena Webb | Receipt | 8899 | Rent Income - August 2017 | 200.00 | | 300.00 |

| Date | Payee / Payer | Type | Reference | Description | Income | Expense | Balance |
|---|---|---|---|---|---|---|---|
| 08/15/2017 | RVA Rental Properties, LLC | Check | 1334 | Management fees - June and July management fee | | 200.00 | 100.00 |
| 08/24/2017 | Kevleena Webb | Receipt | 5718 | Rent Income - August 2017 | 185.60 | | 285.60 |
| 08/24/2017 | Kevleena Webb | Receipt | 5718 | Late Rent Fee - Late Fee for Aug 2017 | 42.10 | | 327.70 |
| 09/01/2017 | Kevleena Webb | Receipt | | Rent Income | 2.30 | | 330.00 |
| 09/06/2017 | Kevleena Webb | Receipt | 8759, 3474, 3476 | Rent Income - September 2017 | 418.70 | | 748.70 |
| 09/06/2017 | Afrikka & LaVaniel Ennis | eCheck | 7B03-FEEA | Owner Distribution - Owner payment for 09/2017 | | 548.70 | 200.00 |
| 10/01/2017 | Kevleena Webb | Receipt | | Rent Income | 1.30 | | 201.30 |
| 10/09/2017 | Kevleena Webb | Receipt | 5135, 5157 | Rent Income - October 2017 | 419.70 | | 621.00 |
| 10/09/2017 | Kevleena Webb | Receipt | 5135, 5157 | Late Rent Fee - Late Fee for Oct 2017 | 16.30 | | 637.30 |
| 10/12/2017 | Afrikka & LaVaniel Ennis | eCheck | 94D0-EBDE | Owner Distribution - Owner payment for 10/2017 | | 537.30 | 100.00 |
| 11/06/2017 | Kevleena Webb | Receipt | 9539 | Late Rent Fee - Late Fee for Oct 2017 | 25.80 | | 125.80 |
| 11/06/2017 | Kevleena Webb | Receipt | 9539 | Rent Income - November 2017 | 421.00 | | 546.80 |
| 11/08/2017 | Afrikka & LaVaniel Ennis | eCheck | F5AE-F65A | Owner Distribution - Owner payment for 11/2017 | | 321.00 | 225.80 |
| 12/01/2017 | Kevleena Webb | Receipt | | Rent Income | 53.20 | | 279.00 |
| 12/06/2017 | Kevleena Webb | Receipt | MO 7293-9733 | Rent Income - December 2017 | 367.80 | | 646.80 |
| 12/06/2017 | Kevleena Webb | Receipt | MO 7293-9733 | Home Warranty - Trade fee | 60.00 | | 706.80 |
| 12/11/2017 | Afrikka & LaVaniel Ennis | eCheck | 664C-D20D | Owner Distribution - Owner payment for 12/2017 | | 321.00 | 385.80 |
| 12/11/2017 | RG Appliance | Check | 1493 | Appliances - Dryer - dryer repair on West Road | | 60.00 | 325.80 |
| 12/11/2017 | RVA Rental Properties, LLC | Check | 1494 | Management fees - Aug, Sep, Oct - Aug, Sept, Oct payments | | 300.00 | 25.80 |
| | | | | Ending Cash Balance | | | 25.80 |
| **Total** | | | | | **4,036.80** | **4,011.00** | |

## Property Cash Summary

| | |
|---|---|
| Required Reserves | 0.00 |
| Work Order Estimates | 0.00 |

**Tenants:** Kevleena Webb

**Mobile:** (804) 475-2331

**Unit:** --

**Property:** 7118 West Road - 7118 West Road Chesterfield, VA 23832

**Status:** Past

**Move in date:** 08/01/2015

**Move out date:** 11/01/2018

**Lease Expiration:** 07/31/2017

**Rent:** 769.00

**Deposit Paid:** 0.00

| Date | Payer | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| Starting Balance | | | | | 0.00 |
| 08/01/2015 | | Mgmt Held Security Deposits | 1,650.00 | | 1,650.00 |
| 08/01/2015 | Kevleena Webb | Payment | | 1,650.00 | 0.00 |
| 11/01/2015 | | Rent Income - November 2015 | 471.00 | | 471.00 |
| 12/01/2015 | | Rent Income - December 2015 | 490.00 | | 961.00 |
| 12/05/2015 | Kevleena Webb | Payment November rent | | 471.00 | 490.00 |
| 12/07/2015 | Kevleena Webb | Payment December rent | | 490.00 | 0.00 |
| 01/01/2016 | | Rent Income - January 2016 | 448.00 | | 448.00 |
| 01/05/2016 | | Late Rent Fee - Late Fee for Jan 2016 | 44.80 | | 492.80 |
| 01/07/2016 | Kevleena Webb | Credit Card Payment (Reference #D803-IMO3) | | 420.00 | 72.80 |
| 01/15/2016 | Kevleena Webb | Payment (Reference #MO 17-348984192) | | 78.00 | -5.20 |
| 02/01/2016 | | Rent Income - February 2016 | 448.00 | | 442.80 |
| 02/06/2016 | Kevleena Webb | Payment (Reference #Money order 6307) February rent | | 443.00 | -0.20 |
| 03/01/2016 | | Rent Income - March 2016 | 448.00 | | 447.80 |
| 03/05/2016 | Kevleena Webb | Payment | | 443.00 | 4.80 |
| 04/01/2016 | | Rent Income - April 2016 | 448.00 | | 452.80 |
| 04/05/2016 | Kevleena Webb | Payment | | 448.00 | 4.80 |
| 04/06/2016 | | Rent Income | -4.80 | | 0.00 |
| 05/01/2016 | | Rent Income - May 2016 | 448.00 | | 448.00 |
| 05/05/2016 | Kevleena Webb | Payment (Reference #17-374148747) | | 500.00 | -52.00 |
| 06/01/2016 | | Rent Income - June 2016 | 448.00 | | 396.00 |
| 06/05/2016 | Kevleena Webb | Payment (Reference #17-398874538) | | 320.00 | 76.00 |
| 06/05/2016 | | Late Rent Fee - Late Fee for Jun 2016 | 44.80 | | 120.80 |
| 06/22/2016 | Kevleena Webb | Payment (Reference #17-399577585) | | 75.00 | 45.80 |

| Date | Payer | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 06/23/2016 | Kevleena Webb | Payment (Reference #coin) | | 1.00 | 44.80 |
| 06/23/2016 | | Late Rent Fee | -44.80 | | 0.00 |
| 07/01/2016 | | Rent Income - July 2016 | 448.00 | | 448.00 |
| 07/05/2016 | | Late Rent Fee - Late Fee for Jul 2016 | 44.80 | | 492.80 |
| 07/08/2016 | Kevleena Webb | Payment (Reference #17-431684907) | | 445.00 | 47.80 |
| 07/18/2016 | Kevleena Webb | Payment (Reference #17-431685007) | | 50.80 | -3.00 |
| 08/01/2016 | | Rent Income - August 2016 | 448.00 | | 445.00 |
| 08/05/2016 | | Home Warranty - tenant paid $100 for warranty company we reimbursed half for her | -50.00 | | 395.00 |
| 08/05/2016 | | Late Rent Fee - Late Fee for Aug 2016 | 44.80 | | 439.80 |
| 08/08/2016 | Kevleena Webb | Payment (Reference #17-431685163) | | 130.00 | 309.80 |
| 08/10/2016 | Kevleena Webb | Payment (Reference #1066787906235) | | 200.00 | 109.80 |
| 08/11/2016 | Kevleena Webb | Payment (Reference #17-431685175) | | 110.00 | -0.20 |
| 09/01/2016 | | Rent Income - September 2016 | 448.00 | | 447.80 |
| 09/05/2016 | | Late Rent Fee - Late Fee for Sep 2016 | 44.80 | | 492.60 |
| 09/07/2016 | Kevleena Webb | Payment (Reference #17-463708151) | | 100.00 | 392.60 |
| 09/08/2016 | Kevleena Webb | Payment (Reference #17-454183664) | | 170.00 | 222.60 |
| 09/12/2016 | Kevleena Webb | Payment (Reference #17-453845054) money order | | 227.00 | -4.40 |
| 10/01/2016 | | Rent Income - October 2016 | 448.00 | | 443.60 |
| 10/05/2016 | Kevleena Webb | Payment (Reference #17-453845157) | | 440.00 | 3.60 |
| 10/05/2016 | Kevleena Webb | Payment (Reference #17-453845158) | | 4.00 | -0.40 |
| 11/01/2016 | | Rent Income - November 2016 | 448.00 | | 447.60 |
| 11/05/2016 | Kevleena Webb | Payment (Reference #17-473536198) | | 445.00 | 2.60 |
| 11/21/2016 | | Rent Income - Rent for November due | 50.00 | | 52.60 |
| 12/01/2016 | | Rent Income - December 2016 | 498.00 | | 550.60 |
| 12/05/2016 | Kevleena Webb | Payment (Reference #206714166615) | | 500.00 | 50.60 |
| 01/01/2017 | | Rent Income - January 2017 | 498.00 | | 548.60 |
| 01/05/2017 | | Late Rent Fee - Late Fee for Jan 2017 | 49.80 | | 598.40 |
| 01/09/2017 | Kevleena Webb | Payment (Reference #R107564379670) | | 500.00 | 98.40 |
| 02/01/2017 | | Rent Income - February 2017 | 498.00 | | 596.40 |
| 02/05/2017 | | Late Rent Fee - Late Fee for Feb 2017 | 49.80 | | 646.20 |
| 02/10/2017 | Kevleena Webb | Payment (Reference #10756438208) money order | | 225.00 | 421.20 |
| 02/14/2017 | Kevleena Webb | Payment (Reference #R107564382310) | | 300.00 | 121.20 |
| 02/22/2017 | Kevleena Webb | Payment (Reference #1549190223) | | 140.00 | -18.80 |
| 03/01/2017 | | Rent Income - March 2017 | 498.00 | | 479.20 |

B420A (Official Form 420A) (Notice of Motion or Objection) (12/16)          EDVA (12/16)

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond        Division

In re:   Kevleena S. Webb                                    )
                                                             )
         *[Set forth here all names including married, maiden, and*     )
         *trade names used by debtor within last 8 years.]*     )          Case No.   19-33315-KLP
                                                             )
                          Debtor                             )          Chapter   13
                                                             )
Address    3200 Meadow Glen Lane                             )
           N. Chesterfield, VA 23234                         )
                                                             )                              2019 AUG 21  PM 12: 14
Last four digits of Social Security or Individual Tax-payer  )
Identification (ITIN) No(s).,(if any):  8856                 )
                                                             )
Employer's Tax Identification (EIN) No(s).(if any):          )
                                                             )

## NOTICE OF MOTION (OR OBJECTION)

 Afrikka and LaVaniel Ennis            has filed papers with the court to Determine discharge-

ability and In Objection to Discharge                                                          .

         **Your rights may be affected.  You should read these papers carefully and discuss
them with your attorney, if you have one in this bankruptcy case.  (If you do not have an
attorney, you may wish to consult one.)**

         If you do not want the court to grant the relief sought in the motion (or objection), or if
you want the court to consider your views on the motion (or objection), then on or before
 08/26/19              , you or your attorney must:

    ☑     File with the court, at the address shown below, a written request for a hearing
          [or a written response pursuant to Local Bankruptcy Rule 9013-1(H)].  If you mail
          your request for hearing (or response) to the court for filing, you must mail it
          early enough so the court will receive it on or before the date stated above.

                    Clerk of Court
                    United States Bankruptcy Court
                    701 East Broad Street
                    Richmond, VA 23219

2

You must also send a copy to:
Afrikka and LaVaniel Ennis
8218 Tatterton Trail
N. Chesterfield, VA 23237


☐    Attend a hearing to be scheduled at a later date. You will receive separate notice
of hearing. If no timely response has been filed opposing the relief requested,
the court may grant the relief without holding a hearing

☑    Attend the hearing on the motion (or objection) scheduled to be held on
__August 28, 2019_____ at _9:10_____ __a.m. at United States
Bankruptcy Court, Eastern District of Virginia, Richmond , 701 E. Broad St.
Courtroom 5100, Richmond, VA, 23219 .

    If you or your attorney do not take these steps, the court may decide that you do not
oppose the relief sought in the motion or objection and may enter an order granting that relief.

Date: _08/21/2019_____

Signature, name, address and telephone number
of person giving notice:

Afrikka L Ennis, Plaintiff
8218 Tatterton Trail
N. Chesterfield, VA 23237
804-496-1388
Virginia State Bar No. _N/A_
Counsel for _N/A_


## Certificate of Service

I hereby certify that I have this _21_____ day of _August_____, 20 _19_, mailed or
hand-delivered a true copy of the foregoing Notice of Motion (or Objection) to the parties listed
on the attached service list.

**SERVICE LIST**

**Kevleena S. Webb, Debtor**

**3200 Meadow Glen Lane**

**N. Chesterfield, VA 23234**


**James E. Kane, Debtor's attorney**

**Kane and Papa PC**

**1313 East Cary Street**

**P.O. Box 508**

**Richmond, VA 23218-0508**


**Suzanne E. Wade, Bankruptcy Trustee**

**P.O. Box 1780**

**Richmond, VA 23218-1780**

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ____Richmond____ Division

In re: Kevleena Shenese Webb

                 Debtor(s)

Afrikka & LaVaniel D. Ennis

            Plaintiff(s)

v.

Kevleena Shenese Webb

          Defendant(s)

Case No.   20-30776-KRH

Chapter    13

Adversary Proceeding No.

### CERTIFICATION UNDER LOCAL BANKRUPTCY RULE 2090-1

Document Title:       Objection to Determine Dischargeability and in Objection to Discharge

Date Document Filed:

Docket Entry No.

I declare under penalty of perjury that (Check one box):

☑ No attorney has prepared or assisted in the preparation of this document.

☐ The following attorney prepared or assisted in the preparation of this document.

_____

(Name of Attorney)

_____

(Address of Attorney)

_____

(Telephone Number of Attorney)

Afrikka L. Ennis_____     LaVaniel D. Ennis Jr._____

Name of Pro Se Party (Print or Type)     Name of Pro Se Party (Print or Type)

_____     _____

Signature of Pro Se Party            Signature of Pro Se Party

Executed on: 09/24 2023 _____ (Date)

[2090edva ver. 09/17]